JAMES A. KISTLER AND ANN D. KISTLER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2369-62. Filed June 26, 1963.

_____

*Louis R. Mayer*, for the petitioners.
*John F. Papsideror*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioners' income tax for the calendar year 1959 in the amount of $182.70. The issue for decision is whether petitioners are entitled to a deduction for transportation expense of $1,111.40 or any portion thereof.

### FINDINGS OF FACT

Petitioners, husband and wife, who resided during the year 1959 in Cleveland, Ohio, filed a joint Federal income tax return for that year with the district director of internal revenue at Cleveland, Ohio.

James A. Kistler (hereinafter referred to as petitioner) is a professional drummer. From January 1 to October 1, 1959, he played at 12 noon on 5 days a week in an orchestra on a Cleveland television station as a "sideman." A sideman is a musician who is not an orchestra leader and who is paid an agreed amount for playing an agreed number of hours in an orchestra. A sideman in an orchestra in the Cleveland, Ohio, area receives a weekly check in payment for his work drawn by the Cleveland Federation of Musicians in accordance with the wage scale set up by the federation. The leader of the orchestra arranges the employment of the sideman in the orchestra. Each week he turns over to the Cleveland Federation of Musicians the total wages of his sideman. The federation makes deductions for withholding taxes and other amounts and draws its check for the net amount due each sideman to such sideman's order. The leader usually actually delivers these weekly pay checks to the sidemen.

During the year 1959 the wage scale of the Cleveland Federation of Musicians contained the following provision:

All scales shall be deemed to include an allowance from the employer for transportation to, and from the place of employment, in the amount of two ($2.00) dollars per day, which amount is included in, and made part of said wage scales.

The constitution of the Cleveland Federation of Musicians contained the following provision:

It shall be a violation of this article for a leader or contractor to pay a member direct, or for a member to accept direct payment from a leader or contractor on any single, steady or passing engagement.

The television station at which petitioner played during 1959 was $7\frac{3}{10}$ miles from his residence. Petitioner drove his personally owned 1958 Chevrolet automobile to the television station carrying his drums with him in his car. He would leave home shortly after 10 o'clock in the morning to arrive at the television station before 11 o'clock in order to use the hour from 11 to 12 to set up his drums and be ready to play at 12 o'clock. Petitioner played at the television station until 2:30 p.m. When petitioner completed playing he would pack up his drums, put them in his car and return home, arriving there at around 3:45 p.m. The drums which petitioner owned and used in his work during 1959 consisted of approximately 24 pieces of equipment. Six pieces were large and the containers in which they were carried were approximately 40 by 24 inches, the size of a large suitcase or small trunk. The total weight of the petitioner's drums and the containers in which petitioner carried them was between 500 and 600 pounds. In order for petitioner to perform properly as a drummer, it was necessary that he use all this equipment except certain spare parts which were necessary for him to have available in case of breakage. Petitioner had only one set of drums with an extra bass drum.

From January 1 through August 30, 1959, petitioner played as a sideman in various orchestras in nightclubs in downtown Cleveland on 6 nights a week from 8:45 p.m. until about 2:15 the following morning. Petitioner after having dinner at his home, left in his automobile at approximately 7:30 p.m. taking his drums with him, in order to arrive at his downtown evening engagement in time to set up his drums. At the conclusion of the evening engagement, he packed up his drums and returned home with them in his car arriving there around 3:30 a.m. Petitioner obtained his work as a sideman in an orchestra from the leader of the orchestra. When he accepted an engagement, unless it was merely for some special occasion, he was assured of 2 weeks' work and after the first 2 weeks, of 2 weeks' notice if he were not to continue with the particular job. Except for the 2 weeks' notice to which petitioner was entitled, he had no assurance of how long any particular engagement of an orchestra in which he was playing as a sideman would continue or whether that orchestra would obtain subsequent engagements.

From September 1 through December 31, 1959, petitioner was a leader of an orchestra that played engagements in various downtown locations on 6 nights a week. He played the same drums as leader

of the orchestra as those he used as a sideman. His time for performing was the same. As the leader he obtained the engagements by contacting various nightclub operators and making the most favorable terms for engaging of the orchestra that he was able to make. The difference between the amount he received from the person engaging the orchestra and the expenses in connection with procuring and performing the engagement, including the pay of his sidemen, constituted his profit. Petitioner, when he was an orchestra leader also after his dinner each night drove his car from his home to the place his orchestra was playing and back home taking his drums with him. The places in which petitioner's evening engagements were performed during the year 1959 both as a sideman and as a leader were on an average between 9 and 10 miles from his home. As an orchestra leader it was necessary for petitioner to visit nightclubs to solicit engagements for his orchestra and to go at least once a week to the office of the Cleveland Federation of Musicians to arrange for the weekly payments to his sidemen. He would always make the trips to the office of the federation when he was in the vicinity thereof for other reasons.

Petitioner wore formal clothes when playing in an orchestra and at least once a week he drove to a cleaner where he left his clothes to be cleaned. Usually, he drove on Saturdays to a cleaner in the area where his mother lived and stopped to visit his mother while making the trip to the cleaner. Petitioner generally on Saturdays also drove to a music store in the downtown area of Cleveland approximately 9 miles from his home, in order to get various parts and equipment he needed for his drums.

During the year 1959 petitioner drove his 1958 Chevrolet automobile a total of 12,000 miles and incurred total cost of $1,190.91 for gasoline, oil, lubrication, insurance, and depreciation. In addition to these costs, petitioner incurred some expenses for tires and tire repair. Petitioner did not pay for parking his car while playing at the television station. Some of the time he parked his car without cost when playing evening engagements and at other times paid to park his car in a parking lot. During the year 1959 petitioner expended a total of $137 for parking his automobile while playing evening engagements.

As a sideman in an orchestra, petitioner was required to furnish his own drums and his own transportation for himself and his drums to the places at which he played. As a leader of an orchestra, petitioner was not furnished with any musical instruments by the persons who engaged the orchestra. Petitioner was not required to remove his drums from the premises upon which the orchestra played. Petitioner had only one set of drums. During the time when he was play-

ing at only one location on a single day he, nevertheless, removed his drums from the premises where the orchestra was engaged to play. Prior to about 1952 petitioner had upon occasions left his drums in the nightclubs in which he was playing. In 1952 he had one of his drums stolen from a nightclub and thereafter made it a practice to take his drums home with him. The nightclubs where petitioner played usually opened for lunch and the management of the nightclub took no responsibility for the safety of petitioner's drums if petitioner left them in the nightclub.

During the year 1959 the total cost paid by petitioner in driving his automobile (including an allocable portion of depreciation thereon) from his home to the television station at which he played as a sideman was $283. The similar total cost paid by petitioner in 1959 in driving to and from the night club engagements at which he played as a sideman was $394. The total cost by petitioner in 1959 in driving to nightclub engagements at which he played as a leader was $196. The total cost paid by petitioner in driving to and from the music store in 1959 was $94, and the additional cost of going by the drycleaners was $52.

Petitioner on his 1959 Federal income tax return reported as wages amounts received from seven different orchestras showing the income tax withheld from such wages and listing the name of the orchestra leader as his employer. On a separate Schedule C he listed as total receipts from his business as orchestra leader for 4 months of the year the amount of $7,093.30. From this amount of total receipts petitioner deducted cost of labor and other expenses to arrive at a net profit of $2,021.88. There was not included in the other expenses deducted by petitioner in arriving at his net profit any amount for automobile costs or other transportation expenses. The net profit shown on this Schedule C was added by petitioner to the amount shown as wages and to certain other amounts of income which he reported as received by him and an amount of income ($1,603.33) received by his wife to arrive at total reported income of $10,221.24. Petitioner deducted the amount of $1,111.40 which he designated as transportation expenses from the total income reported to arrive at his adjusted gross income as shown in his return. Petitioner itemized his deductions from adjusted gross income claiming deductions for contributions, taxes, medical and other expenses totaling $719.03. In explanation of the transportation expenses claimed, petitioner showed total car expenses including depreciation, parking, and insurance of $1,389.27, the percent used for business as "80 percent" and the amount deductible as $1,111.40.

Respondent in his notice of deficiency increased the tax liability of $1,369.27, as shown on petitioner's return to $1,552.67, showing a

deficiency of $182.70 with the statement that the deficiency was based on adjustments and explanations as disclosed in the report of examination, a copy of which had been furnished to petitioner.

Petitioner in his petition alleged error in respondent's disallowance of transportation expenses of $1,111.40.

OPINION

Petitioner states that during the first 9 months of 1959 he was in the trade or business of being a musician as an employee, that in August 1959 he was an employee and also in his independent business as an orchestra leader and during the last 3 months of 1959, only in this independent business. It is petitioner's position that under section 62(2)(C) of the Internal Revenue Code of 1954,[1] as an employee he is entitled to a deduction in computing his adjusted gross income for the cost of transporting his drums to his place of employment and back to his home.[2] He contends that he is entitled to the cost of transporting his drums from his home to the engagements which he had as an orchestra leader and back to his home, either as transportation costs under section 62(2)(C) or as an ordinary and necessary business expense under section 162. It is petitioner's position that the entire cost of his automobile expenses for driving to and from his playing engagements was for the transportation of his drums. Petitioner also contends that his expenses of driving to the music store, to the drycleaners, to places to solicit engagements for his orchestra, and to the federation's office constituted ordinary and necessary business expenses.

Petitioner has made no showing that it was necessary to his business as a musician to make weekly trips to a downtown music store to procure supplies. He has likewise failed to prove that taking his drycleaning to the cleaners in the vicinity of his mother's residence was for business as distinguished from personal reasons.

The record does show that as an orchestra leader petitioner used his car for business purposes in soliciting engagements and going to the federation's office, but the amount of such use is not shown.

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated. Sec. 62(2). TRADE AND BUSINESS DEDUCTIONS OF EMPLOYEES.—

\* \* \* \* \* \*

(C) TRANSPORTATION EXPENSES.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

[2] Since petitioner has itemized his deductions it would be immaterial whether the amount would be classified under section 62(2)(C) of the Internal Revenue Code of 1954 as a transportation cost or under section 162 as an ordinary and necessary business expense since section 62 merely defines what trade and business deductions of employees are permitted to be made from adjusted gross income. However, it is not clear whether respondent used the standard deduction in his determination of deficiency.

Our primary issue for decision is whether the cost to petitioner of transporting his drums was deductible as a business expense in arriving at his adjusted gross income, and if so the amount of such deduction. Since petitioner worked at two different jobs in two different locations for 9 months of the year 1959, he would be entitled, irrespective of whether he transported his drums, to the cost of traveling from one location to the other. We have so held in a number of cases. *William L. Heuer, Jr.*, 32 T.C. 947 (1959), affirmed per curiam 283 F. 2d 865 (C.A. 5, 1960), and *Clarence J. Sapp*, 36 T.C. 852 (1961), affirmed per curiam 309 F. 2d 143 (C.A. 5, 1962). Cf. *Julian D. Freedman*, 35 T.C. 1179, 1182 (1961), affd. 301 F. 2d 359 (C.A. 5, 1962).

Respondent has recognized in his rulings that even though a taxpayer returns from his first place of employment to his home for dinner and then proceeds to the second employment, he can deduct his actual transportation expenses to the extent that they do not exceed the transportation expenses such taxpayer would have incurred had he gone directly from one place of employment to another. Rev. Rul. 55–109, 1955–1 C.B. 261.[3] Respondent offered no explanation of the conflict between his position in the instant case and his own ruling. In any event the position he has taken in the ruling is in agreement with our decision in *Clarence J. Sapp, supra.*

Respondent takes the position that all of petitioner's expenditures with respect to his automobile were nondeductible personal expenditures in the nature of commuting expenses. He relies on *Commissioner* v. *Flowers*, 326 U.S. 465 (1946). Petitioner relies primarily on *Rice* v. *Riddell*, 179 F. Supp. 576 (S.D. Cal. 1959). In that case the Court held that the taxpayer, a tuba and bass violin player for hire at various locations, was a casual musician and that his business as a casual musician was operated from his home. The Court found that since the only practical means of the taxpayer there involved transporting his tuba and bass violin was by his automobile, his expenditures were ordinary and necessary business expenses.

Respondent points out that in *Teague* v. *Riddell*, an unreported case (S.D. Cal. 1959, 4 A.F.T.R. 2d 5190, 59–2 U.S.T.C. par. 9653), the Court held on the basis of a jury finding that the costs to the taxpayer there involved who was a musician performing at various places were

---

[3] Rev. Rul. 55–109, 1955–1 C.B. 261, 264, provides in part as follows:

"Accordingly, it is held that when a reservist attends prescribed drills within the city or general locality which constitutes his principal or regular post of duty, and on that same day is working at some other business location therein, he may deduct his one-way transportation expenses in getting from one such business location to the other. Of course, if the taxpayer returns to his residence for dinner after his regular working hours and before attending the drill, he can deduct his actual transportation expenses only to the extent they do not exceed the transportation expenses he would have incurred had he gone directly from one such business location to the other."

commuting expenses and not deductible where the cost of such travel was not increased by reason of the fact that the taxpayer also transported with him his bass violin. Rev. Rul 63–100, I.R.B. 1963–22, 8, states in part:

> Where it is necessary for a musician to use his automobile to transport his musical instruments between his residence and his place of work because they are too bulky to be carried otherwise, and he would not use his automobile on such trips except for that reason, his transportation expenses are deductible under section 162 of the Internal Revenue Code of 1954.

In effect respondent has recognized that if the travel expenses of an employee from his place of abode to his place of work are increased because of his transporting tools used in his work, such increased expense is deductible. Cf. Rev. Rul. 56–25, 1956–1 C.B. 152, modified by Rev. Rul. 63–100, *supra*.

In *Charles Crowther*, 28 T.C. 1293 (1957), reversed as to disallowance of amount held to be commuting expenses 269 F. 2d 292 (C.A. 9, 1959), we stated at page 1299, 1300:

> The evidence clearly shows that Crowther's use of the automobiles and jeep to travel between his home and the layouts was for the dual purpose of commuting between his home and his work and for transporting tools and equipment used by him in his employment.
>
> It has long been established that commuting expenses, or expenses incurred in traveling from home to one's place of business or employment, are not deductible as business expenses. *Frank H. Sullivan*, 1 B.T.A. 93; *Mort L. Bixler*, 5 B.T.A. 1181; *Charles H. Sachs*, 6 B.T.A. 68; *Abraham W. Ast*, 9 B.T.A. 694; Regs. 111, sec. 29.23(a)–2. The rule is the same regardless of the distance traveled between home and the place of business, *Commissioner* v. *Flowers*, 326 U.S. 465, and regardless of any equitable consideration which makes the use of a particular mode of transportation necessary, *John C. Bruton*, 9 T.C. 882. The fact that public transportation is not available does not require that an exception be made to the rule, since if public transportation were available the fares paid for its use clearly would not be deductible. Consequently, automobile and jeep expenses incurred in lieu of such fares are not entitled to any different treatment, irrespective of whether public transportation is available or not. * * *
>
> *       *       *       *       *       *       *
>
> In allowing a portion of the deductions taken for automobile and jeep expenses, the respondent has recognized, and we think properly so, that the automobiles and jeep, in addition to being used by Crowther to commute between his home and the various layouts at which he worked, also were used by him in his business or trade. * * *

Respondent in the instant case relies on our opinion in *Charles Crowther*, *supra*. He did not explain why he disallowed the entire automobile expense instead of treating this expense to be deductible in part as a business expense to petitioner of transporting his drums. To be consistent with his position in *Charles Crowther*, *supra*, and in Rev. Rul. 56–25, *supra*, he would have to contend that petitioner's

transportation costs were not increased because of transporting his drums. Cf. Rev. Rul. 63–100, *supra*.

Petitioner contends that the sole purpose of using his personal automobile was to transport his drums since drayage costs for his drums would have exceeded the costs of transporting them by automobile. Petitioner states that to have transported his drums by streetcar, bus, or other public conveyance would have been impossible. Petitioner ignores the fact that he would have incurred costs for his own commuting even if it had not been necessary to transport his drums.

Petitioner contends that even if he is not entitled to deduct his entire automobile expenses in connection with his driving to the television station and nightclubs where he worked as a sideman he should be allowed the full deduction when operating his business of orchestra leader. Petitioner contends that his place of operation or "office" was his home. Here as in *William L. Heuer, supra*, we think it unnecessary to decide whether petitioner was an independent operator or employee when he was an orchestra leader. In either case his "place of employment" was the nightclub in which his orchestra was playing.

The facts here show that when petitioner was playing at two different locations, it was necessary that he take his drums from one location to the other in order to be able to play at both places. When petitioner was playing at only one location, it was reasonably necessary that he remove his drums from the location for the protection of them.

On the basis of the facts of record we hold that petitioner is entitled to deduct (1) the entire amount of his transportation costs from the television station to the nightclubs where he played in the evenings during the period he was playing at two places, (2) the transportation costs in connection with soliciting engagements and taking his payroll money to the federation's office when he was an orchestra leader, (3) the portion of his automobile costs in driving from his home to the television station and from the nightclub where he was playing to his home that is allocable to the transportation of his drums during the period when he was playing two engagements, and (4) the portion of his automobile expenses in driving to his nightclub engagements and returning therefrom which is allocable to transporting his drums for each Saturday of the year and for all 6 days of the week during the portion of the year he was playing only one engagement. We consider the costs of petitioner's returning home to have dinner and rest between his two engagements to be a personal expense. Likewise, the portion of his expenses allocable to his commuting to his playing engagements is a personal expense.

Petitioner argues that at a minimum he should be allowed to deduct the $2 per engagement allowance which the federation included in his wages. We do not agree with this argument. This amount was income which petitioner received. He is only entitled to deduct such amounts as he shows to be ordinary and necessary business expenses and the fact that the union wages include $2 for transportation expenses in no way shows that this amount is an ordinary and necessary business expense for petitioner.

There is nothing in the record to show with preciseness the portion of petitioner's automobile expenses which is properly deductible. Considering the evidence as a whole and weighing heavily against petitioner for this lack of preciseness, we hold that petitioner's total transportation expenses (including parking fees) for the year 1959 for the items we have held to be deductible were $400. We hold that petitioner is entitled to a deduction of $400 for transportation expenses in the year 1959 and sustain respondent in his disallowance of the balance of the $1,111.40 claimed by petitioner as such a deduction.

*Decision will be entered under Rule 50.*