ROBERT E. COOPER, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3164–75, 6401–75.   Filed February 28, 1977.

*Robert E. Radke,* for the petitioner.
*George W. McDonald,* for the respondent.

FAY, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax as follows:

| Year | Deficiency |
|------|------------|
| 1972 | $92 |
| 1973 | 96 |

Due to concessions, the sole issue remaining is whether certain expenses incurred by petitioner during the years in issue are deductible under section 162(a)[1] as ordinary and necessary business expenses.

FINDINGS OF FACT

Some facts were stipulated and are so found.

Petitioner Robert E. Cooper resided in Van Nuys, Calif., at the time his petition was filed.

During the years in issue petitioner was employed as a fireman by the Los Angeles Fire Department and was assigned to Fire Station 89 in North Hollywood, Calif., as his permanent duty post. As such, petitioner normally worked 24-hour shifts[2] and was not permitted to leave the fire station on personal business while on duty.

Petitioner is governed in his employment by the orders of his immediate superiors at the fire station—the Fire Chief and the Board of Fire Commissioners (the board).

At one time the Los Angeles Fire Department was completely segregated, with individual fire stations uniformly manned by members of the same race. Sometime during the 1950's the then mayor of Los Angeles and the city council duly ordered the board to integrate the City's fire stations. In an effort to comply with this order, some fire stations were closed and their firemen reassigned to other duty posts. However, the black firemen who were reassigned to fire stations formerly manned by white firemen were forced to accept separate beds, lockers, and dining arrangements at their new duty posts.

In response to this form of discrimination, the board lawfully adopted rules and regulations requiring all firemen at each fire station to participate in a nonexclusionary organized mess at the station house, unless officially excused.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

[2] Work shifts of 96 consecutive hours were sometimes necessary, and on one occasion petitioner was required to work 5 consecutive days and nights, combating an exceptionally large fire.

The only recognized ground for nonparticipation was a physical ailment, which had to be periodically verified by the City's own examining physician. No other excuse relating to personal, religious, or ethnic considerations was acceptable.

As a fire department employee, petitioner was required to participate in the organized mess at his duty post, to the extent of paying his assessed portion of the cost thereof, for each 24-hour shift that he worked.

Petitioner objected to paying the amount assessed as his share of such cost for various nonracist reasons, including the fact that he was required to pay the money even though he was often away from the station on fire department business during the mess period. He relented, however, when threatened with disciplinary action, including his dismissal, if he refused to pay.

Participation in the mess by petitioner's employer consisted of merely providing the basic facilities for the mess.

On his Federal income tax returns for each of the years in issue petitioner deducted the amount of $283, which represented his mandatory contribution to the organized mess, as an ordinary and necessary business expense.

### OPINION

The sole issue presented is whether petitioner is entitled to deduct the required payment of his pro rata share of the cost of providing a nonexclusionary organized mess for the firemen at his place of employment as an ordinary and necessary business expense under section 162(a).

Section 162(a) provides in part as follows:

IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

We have previously held that a taxpayer may be in the trade or business of being an employee. *David J. Primuth*, 54 T.C. 374 (1970). Moreover, the fact that the expenses in question constituted a condition of petitioner's employment renders them ordinary and necessary within the meaning of section 162(a). See *Welch v. Helvering*, 290 U.S. 111 (1933). Thus, the focal point of our inquiry is whether the expenses in question were nondeductible personal expenses under section

262,[3] or whether they constituted business expenses which were directly and proximately related to the active conduct of petitioner's trade or business, and therefore deductible under section 162(a).

Initially, we observe that many expenditures possess both personal and business attributes. In these situations placement of that often thin line which distinguishes a "personal expense" from a "business expense" depends primarily upon the facts and circumstances of each particular case. Cf. *Robert J. Kowalski*, 65 T.C. 44, 63 (1975) (Drennen, J., concurring and dissenting), revd. 544 F.2d 686 (3d Cir. 1976). For example, Rev. Rul. 75–316, 1975–2 C.B. 54, provides in part as follows:

> The fact that a particular expense may under certain circumstances be a nondeductible personal expense does not preclude the deduction of such an expense as an ordinary and necessary business expense under other circumstances. * * *

For specific illustrations of this principle, see: sec. 1.262–1(b)(5), Income Tax Regs. (meals); Rev. Rul. 58–382, 1958–2 C.B. 59 (semiannual physical examination required as a condition of employment); *James A. Kistler*, 40 T.C. 657 (1963) (commuting expenses between two places of employment); *Louis M. Roth*, 17 T.C. 1450 (1952) (home telephone expenses); *Foeoletini Alo*, T.C. Memo. 1976–397 (shoes and gloves); *Arnold Roy Bushey*, T.C. Memo. 1971–149 (prescription safety glasses).

In this case petitioner is a fireman who works shifts of at least 24 hours in duration. He is not permitted to leave the fire station on personal business while on duty, owing to the nature of his employment. Petitioner is required to financially participate in the organized mess at the fire station as a condition of his employment. He pays the assessed amount under protest, as he is frequently unable or unwilling to physically participate in the mess. Furthermore, the requirement that petitioner pay the assessed amount was not established by his employer for the petitioner's convenience or personal benefit. Rather, it was apparently established in order to comply with the legal and moral obligations owed by

---

[3] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

the City to its minority employees. Thus, from a realistic point of view, the payments in issue were a matter of business necessity on the part of both petitioner and his employer.

In summary, upon consideration of the entire record, including the unusual nature of petitioner's employment, the involuntary nature of the expense incurred, petitioner's limited ability to physically participate in the mess, and his employer's lack of intent to compensate or otherwise benefit petitioner by enacting the requirement, we find that the amounts in issue constitute business expenses rather than personal expenses.

In view of these findings, we conclude that petitioner's payment of $283 in each of the years in issue was directly and proximately related to the active conduct of his trade or business.[4] Accordingly, we hold that petitioner is entitled to the claimed deduction in the amount of $283 for each of the years in issue.[5]

*Decisions will be entered under Rule 155.*
Reviewed by the Court.

SIMPSON, *J.,* concurring: I agree with the conclusion of the majority, but I have different reasons for so concluding. Section 119 allows an employee to exclude the value of meals or lodging furnished by and for the convenience of the employer, and the Treasury regulations have recognized that such exclusion is available in some situations when there is a charge for the meals or lodging. Section 1.119–1(a)(3), Income Tax Regs., provides:

(3) *Meals furnished with a charge.* (i) If an employer provides meals which an employee may or may not purchase, the meals will not be

---

[4] In reaching this conclusion we do not adopt any form of "but for" test. In fact, we have previously rejected such a test. See *Ronald D. Kroll,* 49 T.C. 557, 567 (1968).

Nor are we concerned that our decision today will encourage a multitude of unjustified deductions. Indeed, under circumstances which are distinguishable from the present case, we have held that similar expenses constituted nondeductible personal expenses. See *Louis Drill,* 8 T.C. 902 (1947); *Frank J. Borsody,* T.C. Memo. 1976–47; *John M. Murphey,* T.C. Memo. 1975–317; *Ion Z. Josan,* T.C. Memo. 1974–144; *Bayard L. Moffit,* T.C. Memo. 1972–187; *Jess H. Taylor,* a Memorandum Opinion of this Court dated June 24, 1952.

[5] Respondent has not challenged petitioner's substantiation of the claimed expenses.

regarded as furnished for the convenience of the employer. Thus, meals for which a charge is made by the employer will not be regarded as furnished for the convenience of the employer if the employee has a choice of accepting the meals and paying for them or of not paying for them and providing his meals in another manner.

(ii) If an employer furnishes an employee meals for which the employee is charged an unvarying amount (for example, by subtraction from his stated compensation) irrespective of whether he accepts the meals, the amount of such flat charge made by the employer for such meals is not, as such, part of the compensation includible in the gross income of the employee; whether the value of the meals so furnished is excludable under section 119 is determined by applying the rules of subparagraph (2) of this paragraph. If meals furnished for an unvarying amount are not furnished for the convenience of the employer in accordance with the rules of subparagraph (2) of this paragraph, the employee shall include in gross income the value of the meals regardless of whether the value exceeds or is less than the amount charged for such meals. In the absence of evidence to the contrary, the value of the meals may be deemed to be equal to the amount charged for them.

Thus, under section 119, employees are not taxable on amounts charged for meals if four conditions exist: (1) The meals are furnished by the employer; (2) there is a charge for the meals which must be paid irrespective of whether the employee chooses to eat the meals and irrespective of how much he eats; (3) the meals are furnished for the convenience of the employer; and (4) the charge equals the value of the meals.

The employer did not purchase and supervise the preparation of the meals in this case and did not withhold the charge from the compensation paid the petitioner. Yet, the employer furnished the facility for preparing the meals and required the employees to participate in the meals as a condition of their employment. In substance, there is no difference between this situation and the typical situation in which the employer directs the preparation of the meals. In addition, the employer required each employee to pay his assessed share of the costs of the meals, irrespective of whether, in fact, he was able to share in them, and there is no substantial difference between this situation and one in which the employer withholds the charge from the employee's compensation initially. Although the petitioner may receive his customary pay without having the meal charge subtracted from it, he is required to pay his assessed share or forego his employment.

There can be no question but that, if the meals were furnished in kind, they would qualify for the exclusion. During his tour of duty, the petitioner is not allowed to leave the fire station for personal purposes—not allowed to leave to eat elsewhere; he must remain available at all times to respond to emergency calls. Such circumstances satisfy the requirements concerning meals furnished for the convenience of the employer. Sec. 1.119–1(a)(2)(ii)(a), Income Tax Regs. Moreover, there is no evidence indicating that the value of the meals was different than the amounts charged for them. See sec. 1.119–1(a)(3)(ii), Income Tax Regs.

For these reasons, I would hold that the petitioner is entitled to the exclusion under section 119 for the charges assessed against him. I am concerned about the consequences of allowing the petitioner a deduction under section 162(a). The cost of his meals is a personal expenditure within the meaning of section 262, and it does not lose its personal nature even though it was required by the exigencies of his employment. See *David I. Hitchcock,* 66 T.C. 950 (1976), on appeal (4th Cir., Sept. 30, 1976); *Richard Walter Drake,* 52 T.C. 842 (1969); *Louis Drill,* 8 T.C. 902 (1947). If a deduction is allowed under section 162(a) for this personal expenditure, we may be launched down a slippery slope, and it may be difficult to find a rational basis for drawing a line in other cases involving personal expenditures.

DAWSON, SCOTT, TANNENWALD, FEATHERSTON, and WILBUR, *JJ.,* agree with this concurring opinion.

HALL, *J.,* dissenting: The majority holds that an employee may deduct the cost of meals consumed on the employer's premises but not provided by the employer, where for good business reasons the employer insists that the employees pay into a common mess fund for such meals. I find no authorization in the Code for any such deduction. The cost of an employee's meals is normally a personal expense to the employee and except as otherwise provided in the Code (e.g., business entertainment), their cost is not deductible. Sec. 262. The majority finds warrant for the deduction in section 162(a), trade or business expenses. The opinion appears to imply that merely because an employer prescribes where, when, and in

what manner an otherwise personal expense must be made, this suffices to convert it to a business expense. I have found nothing in the statute or prior case law which supports any such proposition. Employers may have views, even requirements, regarding numerous facets of an employee's personal life (clothing, manner of transportation, etc.), without rendering deductible the otherwise personal expenditures necessitated thereby. In this case the employer, for reasons satisfactory to it, insisted that its employees, including petitioner, eat meals together. The expense was still for meals, and in my view still personal. Nor does it matter that petitioner was "on duty" while in the mess hall. One may be on duty and nonetheless incur personal expenses.

To the extent that petitioner was required to, and did, pay for meals he did not eat (for whatever reason), I would concede that the cost would be an ordinary and necessary expense of the business of being a fireman. But where the money goes to buy meals which the petitioner ate, I see no reason why the employer's mere strictures on the time, place, and manner of dining would make the cost of such meal a business expense.

Unlike the concurring opinion, I am equally unable to find any help for petitioner in section 119. In that section Congress has chosen to permit the exclusion from income of meals *furnished by the employer* for the employer's convenience. It is true that the regulations apply this exclusion even if there is an express deduction of a charge therefor from the employee's compensation. This seems a sensible recognition of the fact that in any event there is no such thing as a free lunch. The difficulty, however, is that Congress saw fit to provide the exclusion only where the employer furnished the meals. It is not for us to apply an essentially legislative judgment that "there is no difference between this situation and the typical situation in which the employer directs the preparation of the meal." It may or may not be that as a matter of sound legislative policy no such distinction should be drawn. But from our standpoint as judges, there is indeed a difference between the two situations. The difference is that Congress *has* provided an exclusion in the "typical situation" and has *not* provided one where the employer does not furnish the meals. Moreover, Congress has at best provided an exclusion,

not a deduction. The petitioner here seeks a deduction. Had Congress intended not merely to render excludable the value of employer-furnished meals, but to render deductible the cost of purchasing employee-furnished meals, it would no doubt have provided such a deduction in Part VII of Chapter 1, correlative to section 119's exclusion. Its failure to do so reinforces my conclusion that respondent is here entitled to decision.

RAUM, J., agrees with this dissent.