BERNARD G. and SADIE V. MURPHY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Murphy v. Commissioner
Docket Nos. 2027-75, 6932-75.
United States Tax Court
T.C. Memo 1980-25; 1980 Tax Ct. Memo LEXIS 559; 39 T.C.M. (CCH) 958; T.C.M. (RIA) 80025; January 28, 1980, Filed Bernard G. Murphy, pro se. Marwin A. Batt, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in and additions to petitioners' income tax as follows: Additions to
Year
Deficiency
Tax Sec. 6653(b) [1]
1963
$ 5,954.46
$2,977.23
1964
14,629.23
7,314.61
1965
4,362.07
2,181.03
1966
4,095.79
2,047.89
1967
5,607.92
2,803.96
1968
17,979.67
8,989.83
1969
917.07
458.53
1970
1,033.66
516.53
1971
7,090.65
The issues for our decision are: (1) Whether petitioners had unreported income for the years 1963 to 1970 inclusive, and whether the failure to report said income was due to fraud. (2) Whether the statute of limitations bars assessment for 1971. (3) Whether petitioners are entitled under section 162 to deduct expenses incurred for legal and *561 bail-bond fees for the year 1971. In Docket No. 2027-75, petitioners failed to present proof as to climed dependency exemptions for their daughter for the years 1968 and 1969, and as to an adjustment made with respect to a capital gain. Petitioners also failed to introduce any evidnce concerning a loss claimed for purported section 1244 stock. As petitioners have the burden of proof, Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure, respondent's determination as to these issues must prevail. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation together with the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition in each of the docketed cases, petitioner, Sadie Murphy, resided in Jersey City, New Jersey, and petitioner, Bernard Murphy, was incarcerated at Lewisburg Penitentiary, Lewisburg, Pennsylvania. During the years 1957 to 1970, Bernard Murphy (herein-after sometimes referred to as petitioner), as a purchasing agent for Jersey City, New Jersey. His duties included placing purchase orders for supplies and equipment and being *562 responsible for contracting with vendors who wished to do business with Jersey City. On August 10, 1972, Mr. Murphy ws convicted of the following federal offenses: conspiracy to obstruct, delay and affect interstate commerce by estortion; conspiring to use facilities of interstate commerce in aid of unlawful activity (bribery and extortion); obstructing and delaying interstate commerce by extortion. These convictions stemmed from a criminal investigation into corruption among public officials of Jersey City. Essentially, various public officials were involved in a kickback arrangement with the contractors Jersey City would do business with. In order to be awarded a conteact with Jersey City contractors were required to kickback a percentage (usually 10 percent) of the contract price to various officials. From 1964 to 1970, Mr. Murphys received payments from the following entities: McGuinness G.M.C. Truck, Inc., Robert D. Colocurcio Inc., Sylvan Pool, Ardsley, and Ray Palmer Associates. The bulk of respondent's deficiency determinations for each of these years consisted of these contractor payments as items of unreported income. Information regarding the source and amounts *563 of the payments was obtained from interviews with the contractors made during the criminal investigation and also from their testimony at trial. The contractors told respondent's agents that they had paid petitioner 10 percent of the amount of the contracts they had with the city. For the years 1964 to 1970, respondent determined that Mr. Murphy received the following payments from the entities listed above: 1964
1965
1966
1967
1968
1969
1970
McGuinness G.M.C.
Truck, Inc.
$36,940
$11,433
$ 6,310 $ $18,614
$1,000 $ Robert D.
Colocurcio Inc.
2,030
4,512
9,155
19,621
Sylvan Pool
6,000
Ardsley
10,000
Ray Palmer
Associates
2,884
$38,970
$15,945
$15,465
$19,621
$34,614
$1,000
$2,884
During the years 1963 through 1970, petitioner's salary was: 1963
$11,954.02
1964
12,413.79
1965
12,909.26
1966
13,518.69
1967
13,425.00
1968
14,437.00
1969
15,064.91
1970
15,693.00
In 1963, Mr. Murphy purchased 48 $500 savings bonds at $395 per bond for a total cost of $18,000. The bonds were purchased monthly in groups of four. Respondent introduced exhibits showing *564 various assets which petitioners acquired from 1961 to 1969. These assets consisted of: deposits to checking and savings accounts, savings bonds, stocks, additions to a credit union savings account and a Public Employees Retirement Savings Fund, a personal residence, savings certificates, automobiles and miscellaneous personal items. Petitioners' liabilities for this period consisted primarily of a mortgage obligation on their home and also amounts owed to a stock brokerage firm. Based on the various items in the exhibits, we find that petitioners' net worth for each of the years in question was: Annual Net
Period Ending
Net Worth
Worth Increase
12/31/63 [2]
$ 67,274.12 $ 12/31/64
81,754.02
14,479.90
12/31/65
88,870.59
7,116.57
12/31/66
95,388.62
6,518.03
12/31/67
147,025.88
51,637.26
12/31/68
160,977.74 [3]
13,951.86
12/31/69
205,885.86
44,908.12
*565 Total Net Worth Increase $138.611.74 With regard to the various assets which constituted petitioners' net worth for the relevant period, petitioners engaged in various transaction forms. Petitioner bought and sold stock through accounts in his children's names. Substantial deposits were made in the children's bank accounts. Mrs. Murphy signed various documents, maintained several bank accounts and had some of the savings certificates listed under her name. In addition, Mrs. Murphy admitted to having seen the bank statements from these various accounts. Petitioners' taxable income, as reflected on their returns for the respective taxable years was as follows: 1963
$ 7,740.00
1964
6,560.00
1965
7,300.06
1966
7,260.00
1967
7,200.00
1968
10,500.00
1969
9,837.40
1970
12,721.00
In 1971, Mr. Murphy incurred $15,000 in legal fees in connection with his criminal defense to the federal charges. In addition, he also incurred a bail-bond fee of $4,500 in that matter.
Petitioners' tax return for the year 1971 was filed on June 8, 1972. Respondent mailed the notice of deficiency which forms the basis of Docket No. 6932-75 on April 25, 1975. OPINION
*566 Initially, we will consider the issue of petitioners' income tax liability for the contractor payments petitioner received between 1964 and 1970. Petitioner admits that he received these payments yet claims that all of the funds were passed on to others. [4] Although it is plausible that petitioner could have passed on the payments to third parties, especially in view of the concerted nature of the kickback scheme, we cannot find that petitioner's bald testimony in this regard is credible. He failed to offer additional proof (for example, the testimony from these claimed third parties) that the payments were passed on to others. Moreover, the exhibits demonstrating petitionrs' net worth for the 1963 to 1969 period both negate petitioner's assertions and buttress respondent's determination: the purchases of the savings bonds, stock, the increases in bank accounts, etc., evince an increase in petitioners' net worth of $138,611.74 while the total contractor payments listed in respondent's determination for the period from 1964 to 1970 amounted to $128,499. *567 Petitioner, in an attempt to account for this significant increase in net worth, claims that as a result of winning various poker games in the late 1950's, a certain individual owed him approximately $50,000 and that this money was paid to him in installments in the early 1960's. Even if we were to believe this highly incredible story--no mention of petitioner's purported poker playing profits was made until trial--a different result as to petitioners' liability for the deficiencies would not be mandated as gambling profits likewise represent taxable income. Section 61, Carmack v. Commissioner,183 F. 2d 39 (5th Cir. 1950), affirming a Memorandum Opinion of this Court; Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). Petitioners bear the burden of proving that respondent's determination was erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. We hold with respect to the contractor payments petitioner received for the years 1964 to 1970 that petitioners failed to overcome respondent's presumption of correctness and thus, those items are taxable income to petitioners. *568 Next, we will consider the issue of petitioners' liability for income tax for the calendar year 1963. In contrast to the deficiencies asserted for the later years, there was no direct evidence in the year 1963 of omitted contractor payments. Instead, respondent based his determination that petitioner omitted $18,000 in income on evidence that petitioner purchased $500 savings bonds (at a cost of $395 each) at regular intervals during the year 1963. The 48 savings bonds were purchased for a total cost of $18,000, yet petitioners' return for 1963 reflected taxable income of only $7,740. Again, we note that respondent's deficiency determination is presumptively correct and that the burden if proof is on the taxpayer to show that the determination is incorrect. Since petitioners have introduced no evidence to show that the source of the funds for the bond purchases was nontaxable in nature, they have failed to prove that the determination was erroneous. Petitioner's gambling saga, even if believable, would in no way rebut respondent's determination. As a result, we are compelled to sustain the deficiency and hold that petitioners received $18,000 in additional income in 1963. *569 The next issue for our consideration concerns petitioners' income tax liability for the calendar year 1971 (Docket No. 2027-75). Petitioners have argued that the statutory period for assessment had expired on April 25, 1975, the date on which the notice of deficiency was mailed. However, petitioners' return for 1971 was not filed until June 8, 1972. Consequently, respondent's mailing of the deficiency was timely as such was within 3 years of filing the return. Sec. 6501. The substantive issue arising out of the calendar year 1971 concerns the deductibility of the expenses for legal and bail-bond fees which petitioner incurred in connection with the criminal charges for which he stood trial. Respondent, citing Kurkjian v. Commissioner,65 T.C. 862 (1976), maintains that since Mr. Murphy was acting contract to the wishes of his employer and in violation of his duty as a public servant, neither the legal fees nor the bail-bond fee is allowable as deductions under section 162. In determining the deductibility of legal expenses under section 162 the origin and character of the claim with respect to which the expenses were incurred must be ascertained. In order *570 to be allowable business deductions, litigation fees and attendant legal expenses must relate to a claim which arises in connection with the axpayer's profit-seeking activities. United States v. Gilmore,372 U.S. 39 (1963).In the case at hand, the criminal charges against the petitioner found their source in petitioner's business activities as a purchasing agent for Jersey City. We believe that the expenses claimed here fall within the ambit of the Gilmore test, especially in light of the Supreme Court decision in Commissioner v. Tellier,383 U.S. 687 (1966). In Tellier, a taxpayer who was in the business of underwriting the public sale of stock offerings and purchasing securities for resale to customers, was criminally charged with various securities and mail fraud violations. Attorney's fees incurred in connection with his unsuccessful defense of the criminal prosecution were claimed as section 162 deductions. The Supreme Court agreed with the Commissioner's concession that these expenses were ordinary and necessary business expenses incurred in the taxpayer's business and refused to disallow the deductions on the ground that their *571 allowance would frustrate public policy. Respondent's reliance on Kurkjian,supra, is misplaced. The legal fees which were incurred in that case were held to be nondeductible personal expenses because of the finding that the taxpayer's activities did not constitute a trade or business. Here petitioner was clearly in the trade or business of being an employee for Jersey City. Ordinary and necessary expenses incurred in the trade or business of being an employee are deductible under section 162. Cooper v. Commissioner,67 T.C. 870 (1977); Primuth v. Commissioner,54 T.C. 374 (1970). The fact that the criminal charges arose out of petitioner's activities as an employee is of no consequence. The legal and bail-bond fees were ordinary and necessary expenses incurred in petitioner's trade or business and thus are allowable as section 162 deductions. Commissioner v. Tellier,supra.
The next issue for decision is whether any part of petitioners' underpayment of taxes for each of the years in question was due to fraud. Section 6653(b) provides in part: (b) Fraud.--If any part of any underpayment * *572 * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *. The respondent has the burden of proving by clear and convincing evidence that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. It must be demonstrated that the taxpayer intended to evade taxes which he knew or believed he owed, by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F. 2d 1002 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner,394 F. 2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107 (1956). Respondent need only prove that some part of the underpayment is attributable to fraud, Otsuki v. Commissioner,53 T.C. 96 (1969), and if fraud is established, the 50 percent penalty is imposed not only on that portion of the underpayment which is the result of fraud, but on the entire deficiency. Sec. 6653(b), (c); Stone v. Commissioner,56 T.C. 213 (1971). *573 The issue of fraud involves a question of fact which requires an examination of the entire record. Mensik v. Commissioner,328 F. 2d 141 (7th Cir. 1964), affg. 37 T.C. 703 (1962), cert. denied 379 U.S. 827 (1964); Otsuki v. Commissioner,supra, at 105-106. As it is often difficult to establish fraud by direct proof of intention, the taxpayer's entire course of conduct can often be relied on to establish circumstantially the requisite fraudulent intent. Stone v. Commissioner,supra, at 223-224; Otsuki v. Commissioner,supra, at 105-106. In satisfying his evidentiary burden as to the issue of fraud, respondent cannot rely solely on the normal presumption of correctness which attaches to his deficiency determination: There must be additional independent evidence from which fraud can be inferred. The taxpayer's failure to overcome the presumption of correctness as to the deficiencies, even for a period of consecutive years, does not establish fraud. Drieborg v. Commissioner, 225 F. d 216 (6th Cir. 1955), affg. in part and revg. in part a Memorandum Opinion of this Court. *574 However, in the instant case, there is clear and convincing evidence demonstrating petitioners' receipt of unreported income. Based on the entire record, the evidence convincingly establishes that petitioners fraudulently underpaid their taxes for each of the years in question, except for 1970. For the year 1963, the evidence which proves petitioners' unreported income is the monthly purchase of 48 savings bonds for a total cost of $18,000. The consistent and periodic acquisition of the bonds, especially in view of their inherent savings aspect, is analogous to a series of monthly bank deposits. Under the bank deposits method of reconstructing income, this evidence suffices to prove that petitioners received taxable income for 1963. Respondent's reconstruction of income by use of the bank deposits method has a long history of judicial approval. See e.g., C.B.C. Supermarkets, Inc. v. Commissioner,54 T.C. 882 (1970); Goe v. Commissioner,198 F. 2d 851 (3d Cir. 1952), affirming a Memorandum Opinion of this Court, cert. denied 344 U.S. 897 (1952); Halle v. Commissioner,175 F. 2d 500 (2d Cir. 1949), affg. 7 T.C. 245 (1946), *575 cert. denied 338 U.S. 949 (1950); Mauch v. Commissioner,113 F. 2d 55 (3d Cir. 1940), affg. 35 B.T.A. 617 (1937); Oliver v. United States,54 F. 2d 48 (7th Cir. 1931), cert. denied 285 U.S. 543 (1932). We are convinced that a significant portion of the $18,000 was taxable income and, as a consequence, petitioners failed to report a substantial amount of taxable income for that year. Although we might feel compelled to hold otherwise if respondent were required to prove an exact dollar amount for purposes of the fraud penalty, such a hypothetical question need not concern us since the respondent is only required to prove that some portion of the underpayment (and not the precise amount) is attributable to fraud. Otsuki v. Commissioner,supra.
For the years from 1964 to 1969, we also believe that respondent has sustained his burden of proving that there was taxable income which petitioners failed to report. Petitioners' net worth for that period increased by $138,611.74. With the likely source for this increase being the contractor payments, a significant portion of the annual increases *576 in petitioners' net worth must have been attributable to unreported taxable income. Although there are discrepancies between the deficiencies and the increases in net worth for various years, such does not mandate a contrary result. Insofar as the imposition of the fraud penalty in this particular case is concerned, respondent need only show that there were substantial amounts of income which petitioners failed to report as income for each of the years in issue. We believe that respondent has satisfied this test. A consistent pattern of under-reporting substantial amounts of income over a period of years, standing alone, is persuasive evidence of fraud. Holland v. United States,348 U.S. 121 (1954). Accordingly, we hold for the taxable years 1963 to 1969 that petitioners' underpayments were due to fraud. Respondent offered no evidence as to petitioners' net worth for 1970. The exhibits demonstrating their increase in net worth does not include the year 1970. Accordingly, we find that respondent has failed to satisfy his burden of proving that any part of the underpayment of tax for that year was due to fraud. A final consideration in terms of the fraud *577 issue involves proof of fraud as far as Mrs. Murphy is concerned. Although her liability for the deficiency is established under section 6013 because of the joing return filing, she will be liable for the fraud penalty only if the respondent has shown that some part of the underpayment is due to fraud on her part. Stone v. Commissioner,supra, at 226-228; section 6653(b). We are satisfied that the evidence demonstrates fraud on the part of Mrs. Murphy. Many of the checks deposited in various accounts were deposited by her. Some of the savings certificates were in her name. Mrs. Murphy admits to having seen the bank statements from these various accounts yet claims, incredibly, that she was unaware that her family had substantial amounts of money in the bank. Her explanation was that since she was so busy with family matters, she left all of the family's financial affairs to be attended to by her husband; she never went through his papers or questioned his activities. We cannot accept Mrs. Murphy's testimony on this matter and find accordingly that she was aware of substantial amounts of unreported income. Consequently, respondent has convinced us that *578 part of the underpayment for each of the years from 1963 to 1969 was due to fraud on her part. In conclusion we hold that petitioners had unreported income for the years 1963 through 1970; that the statute of limitations had not run when respondent mailed the notice of deficiency for 1971; that the petitioners are entitled to deduct the legal and bail-bond fees incurred in 1971; and that petitioners are liable for the fraud penalty for the years 1963 through 1969. A decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue, except as otherwise expressly indicated.↩
2. Some of the information regarding the assets petitioners owned at the beginning of this net worth period was obtained from an application for a mortgage loan from The Provident Institution For Savings In Jersey City, dated July 25, 1963. ↩
3. We have adjusted the net worth figure for 1968 as there was an error in determining the year-end balance figure for Mrs. Murphy's account (#3682) at Elysian Savings and Loan. This adjustment, however, has no ultimate bearing on the aggregate net worth increase for the entire period.↩
4. Petitioners and respondent have stipulated that petitioner received payments from the enumerated contractors although the amounts of such were not stipulated.↩