**Richard R. SIBLA, Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**Robert E. COOPER, Petitioner-Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

Nos. 78–1295, 77–3815.

United States Court of Appeals, Ninth Circuit.

Jan. 7, 1980.

Robert E. Radke, Van Nuys, Cal., for Commissioner of Internal Revenue.

John B. Furay, Lewis & Marenstein, Los Angeles, Cal., for respondent-appellant.

James A. Riedy, Washington, D. C., for Robert E. Cooper; M. Carr Furguson, Washington, D. C., on brief.

John B. Furay, Los Angeles, Cal., amicus curiae.

Richard R. Sibla, pro se.

Before KENNEDY and TANG, Circuit Judges, and CURTIS,* District Judge.

CURTIS, District Judge:

We have before us two appeals from decisions of the tax court upon nearly identical fact situations, the difference between them being of no relevance on this appeal. A single opinion therefore seems appropriate for the disposition of both.

These appeals involve an attempt by the taxpayers to deduct from their respective incomes their share of expenses of a mandatory organized mess at the firehouse where they were stationed. The tax court decided in favor of the taxpayers and the Commissioner has appealed.

The relevant facts are largely undisputed.

## FACTS

During the relevant period the taxpayers were employed as firemen by the Los Angeles Fire Department and were assigned to Fire Station No. 89 in North Hollywood, California. They normally worked 24-hour shifts and were not permitted to leave the fire station on personal business while on duty.

In the late 1950's a desegregation plan was implemented by the Fire Department. Previously segregated posts were consolidated in order to eliminate segregation within a post. The Board of Fire Commissioners adopted rules requiring all firemen at each fire station to participate in a nonexclusionary organized mess at the station house, unless officially excused. The only recognized grounds for nonparticipation was a physical ailment verified by the city's own examining physician.

The Fire Department provided kitchen facilities, but the firemen themselves generally organized the activities themselves— they provided dishes and pots, purchased and prepared the food, assessed members for the cost of the meals and collected the assessments. Meal expenses averaged about $3.00 per man for each 24-hour shift which the taxpayers were required to pay even though they were at times away from the station on fire department business during the mess period.

In 1973, the appellant Sibla deducted his total payments for the year. The appellant Cooper deducted the amounts he had paid into the organized mess expense in the years 1972 and 1973. Both appellants claim the deduction as an ordinary and necessary business expense under section 162(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 162(a)). In both cases the Commissioner disallowed the deduction as a non-deductible personal expense. The Commissioner was overruled, but by a divided court. The majority consisting of seven judges allowed the deduction under section 162(a). A concurring opinion written by Judge Simpson,

---

\* Honorable Jesse W. Curtis, United States District Judge, Central District of California, sitting by designation.

although allowing the deduction, chose to do so under the provisions of section 119 (26 U.S.C. § 119) and would have disallowed it under section 162(a). The concurring opinion was signed by five other judges, two judges dissented.

## ISSUE ON APPEAL

■ The issue on appeal therefore is "whether the tax court erred in holding that taxpayer's share of the expenses of the organized mess at the firehouse was deductible under section 162(a) or section 119 of the Internal Revenue Code of 1954." We hold that such expenses are both deductible under section 162(a) and excludable under section 119.

## BUSINESS EXPENSE DEDUCTION UNDER § 162

Section 162(a) provides a deduction for all the "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business, . . ."

Section 262 of the Internal Revenue Code of 1954 provides: "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

■ The Commissioner argues that an expense is "personal" rather than "business" if it is personal in character and could be incurred whether or not the taxpayer engaged in business activity. An expense for meals or groceries is generally considered a nondeductible personal expense. Here the taxpayer would have incurred a similar expense whether or not he ate at work. Consequently, the Commissioner contends the fact that the taxpayer incurred the expense while at work does not change the personal character of the expenditure.

In allowing the deduction, Judge Fay speaking for the majority observed initially that:

"[M]any expenditures possess both personal and business attributes. In these situations placement of that often thin line which distinguishes a 'personal expense' from a 'business expense' depends primarily upon the facts and circumstances of each particular case. *Cf. Robert J. Kowalski*, 65 T.C. 44, 63 (1975) (Drennen, J., concurring and dissenting), *revd.* 544 F.2d 686 (3d Cir. 1976). For example, Rev.Rul. 75–316, 1975–2 C.B. 54, provides in part as follows:

'The fact that a particular expense may under certain circumstances be a nondeductible personal expense does not preclude the deduction of such an expense as an ordinary and necessary business expense under other circumstances.' "

■ As the tax court has indicated, that which may be a personal expense under some circumstances can, when circumscribed by company regulations, directives, and conditions, lose its character as a personal expense and take on the color of a business expense. Recognizing the "unusual nature of petitioner's employment, the involuntary nature of the expense incurred, petitioner's limited ability to physically participate in the mess, and his employer's lack of intent to compensate or otherwise benefit petitioner for enacting the requirement, . . ." the court said, "upon consideration of the entire record, . . . we find that the amounts in issue constitute business expenses rather than personal expenses."

■ In reaching such a determination, we consider that the tax court has exercised that degree of special expertise which Congress has intended to provide in that tribunal, and that this court should not overrule that body, unless some unmistakable question of law mandates such a decision. As the Supreme Court said in *Commissioner v. Heininger*, 320 U.S. 467, 475, 64 S.Ct. 249, 254, 88 L.Ed. 171 (1943):

"Whether an expenditure is directly related to a business and whether it is ordinary and necessary are doubtless pure questions of fact in most instances. Except where a question of law is unmistakably involved a decision of the Board of Tax Appeals on these issues, having taken into account the presumption supporting the Commissioner's ruling [footnote

omitted], should not be reversed by the federal appellate courts [footnote omitted]. Careful adherence to this principle will result in a more orderly and uniform system of tax deductions in a field necessarily beset by innumerable complexities." 320 U.S. at 475, 64 S.Ct. at 254. The tax court's finding that the taxpayer's mess expenses qualify as an "ordinary and necessary business expense" is a finding of fact which is well supported by the evidence in the record before us and should be accepted.

Those judges who dissented from this view express the fear that, "If a deduction is allowed under section 162(a) for this personal expenditure, we may be launched down a slippery slope, and it may be difficult to find a rational basis for drawing a line in other cases involving personal expenditures." Although we recognize the court's concern, we do not consider the task so difficult as to justify abdicating what we believe is the court's duty to try to find the congressional intent in these complex statutes. The tax laws are shot through with instances in which courts are called upon to make delicate factual assessments and interpretive decisions in areas where rational distinctions are difficult to establish. And we think the task of doing so here is no greater than that often encountered by courts working in this field of the law.

The Commissioner cites *Stiner v. United States*, 524 F.2d 640 (10th Cir. 1975), where the court refused to allow a deduction for the cost of a uniform where the clothing was suitable for ordinary wear. In a very brief opinion, the *Stiner* court based its affirmance of the directed verdict of the district court on the fact that "no evidence was produced at trial which in our opinion established that the items in question [shoes, boots, gloves, furs, and cosmetics] were unusual or unique and not adaptable to the general usage as ordinary clothing." 524 F.2d at 641. On the contrary, the tax court below found the taxpayer's situation here to be both "unusual" and "unique," and considering the entire record, found that the amounts in issue constituted business expense rather than personal expense. The *Stiner* case is clearly distinguishable on its facts.

In *Pevsner v. Commissioner*, —— T.C. —— (1979), reported in 48 U.S.L.W. 2200 (Sept. 18, 1979), the tax court allowed a deduction under section 162(a) for the cost of clothes that were useful only in the workplace. The taxpayer there was required to purchase high fashion designer clothes for her job which, although suitable for general wear, did not appeal to the taxpayer for general wear, she preferring a simple lifestyle to which such clothes were not suitable.

In support of its contention that the cost of meals is a personal expense not deductible under section 162(a), the Commissioner cites *James v. United States*, 308 F.2d 204 (9th Cir. 1962) and *LaForge v. Commissioner*, 434 F.2d 370 (2d Cir. 1970). Both cases are so dissimilar on the facts with which we are confronted here that neither are persuasive. *James* involved section 23(a)(1)(A) of the Internal Revenue Code of 1939 and concerned a claim which was under the "away from home" subsection similar to section 162(a)(2), the sole issue being whether the taxpayer "had a home in the City of Reno . . ." 308 F.2d at 205. In *LaForge*, the principle issue was "whether the taxpayer . . . failed adequately to substantiate certain entertainment deductions and whether the Tax Court correctly computed the portion of his country club dues which were deductible as an entertainment facility expense." 434 F.2d at 371.

The Commissioner also relies upon two tax court memorandum decisions, *John M. Murphey*, P–H Tax Ct. Mem. ¶ 75,317 (1975), and *Gregory J. Moscini*, P–H Tax Ct. Mem. ¶ 77,245 (1977). Both of these cases can easily be distinguished from the facts before us. In *Murphey*, the taxpayer, a fireman, was free to eat his own food and did not pay into a mandatory mess program, and it is not clear whether the court was discussing "deductions" under section 162(a) or the exclusion of "meals furnished by the employer for his convenience" under section 119. *Moscini* deals with a policeman who was not required to purchase any

meals as a condition for his employment and there was no evidence that the taxpayer was ever required to purchase a meal which he did not eat because of his police duties. The facts distinguish both *Murphey* and *Moscini.*

## MEAL EXCLUSION UNDER § 119

The concurring judges would allow such payment to be excluded from gross income under section 119. This section allows an employee to exclude the value of meals or lodging furnished him by his employer for the convenience of the employer. In summarizing the regulations section 1.119–1(a)(3), Income Tax Regulations, the court pointed out that employees are not taxable on amounts charged for meals if four conditions exist: (1) The meals are furnished by the employer, (2) there is a charge for the meals which must be paid irrespective of whether the employee chooses to eat the meals, and irrespective of how much he eats, (3) the meals are furnished for the convenience of the employer, and (4) the charge equals the value of the meals. From that the court reasons that while "[t]he employer did not purchase and supervise the preparation of the meals in this case and did not withhold the charge from the compensation paid the petitioner, . . . the employer furnished the facility for preparing the meals and required the employees to participate in the meals as a condition for their employment." The concurring court further pointed out:

1. Witness Robert E. Radke appearing as an expert witness for petitioner testified as follows:

   Q  Do—do the Fire Department authorities participate in any way in the collection of the—in the collection for the mess or the purchasing of the food?
   A  Yes, in a sense that each mess or each station is presided over by some senior officer of some grade and at his—it is his personal responsibility to make sure that this is done on each day.
   Q  But the mess is basically self-organized and self-policed in the sense that the actual collection and purchasing of the food and preparation of the food is done by the members in that—

"There can be no question but that, if the meals were furnished in kind, they would qualify for the exclusion. During his tour of duty, the petitioner is not allowed to leave the fire station for personal purposes—not allowed to leave to eat elsewhere; he must remain available at all times to respond to emergency calls. Such circumstances satisfy the requirements concerning meals furnished for the convenience of the employer. Sec. 1.119–1(a)(2)(ii)(a), Income Tax Regs."

The court concludes, "In substance, there is no difference between this situation and the typical situation in which the employer directs the preparation of the meals."

We agree, especially in the light of other similarities appearing in the record.

Admittedly, the record is sketchy, but it appears that meals are actually provided by the cook, in the sense that he selects the menus, supervises the purchase of the groceries, and cooks and serves the meals. The cook is appointed by the Fire Chief or the highest ranking officer at the station,[1] presumably by some direction or authority from the employer. The money is collected by one "delegated by the chief." There is no evidence that the cook receives extra pay for his work, but it appears almost certain that he would be relieved of other duties in exchange for his culinary activities, from which it may well be argued that he is compensated by the employer. And the plan, whereby the meals are furnished, has been established by the management.[2]

1.  A  That's a delegated duty, delegated from the Captain or the Chief Officer to the individual man.
   Q  And is that done on a rotating basis?
   A  In some stations it's rotated because nobody wants to be cook; in some stations it's a voluntary act on the part of one member for a period of time because he prefers to cook. *Cooper v. Commissioner,* No. 77–3815, Reporter's Transcript, Vol. II, p. 10.

2.  Witness Radke further testified:
   ". . . the Board of Fire Commissioners . . . took affirmative action by adopting Resolution No. 405, which states among other things that in an effort to produce the integration that they wanted and would have, they were going to have integrated messes, that ev-

Relying upon these facts, a strong argument could have been made that the meals were in fact "furnished in kind" by the employer. The tax court found otherwise and we are of course bound by that ruling, nor are we critical of the tax court for so finding, for the evidence is ample to support it. We simply refer to these facts to show the faint line of difference between the two concepts. We think it too slender a reed upon which to hang tax liability.

The Commissioner places heavy reliance upon *Commissioner v. Kowalski*, 434 U.S. 77, 98 S.Ct. 315, 54 L.Ed.2d 252 (1977), in which the Supreme Court held that "cash meal allowances" were not excludable under section 110. In *Kowalski*, state police troopers employed by the state of New Jersey had included in their gross pay a cash meal allowance. Although the troopers were required to remain on call in their assigned patrol areas during their midshift break, they were not required to eat lunch at any particular location and, indeed, many ate at home. Nor were they required to spend the meal allowance on food. The tax court rejected the deduction, but the court of appeals reversed. The Supreme Court held that cash meal allowance payments were not excludable under section 119, since they are funds over which the taxpayer has complete dominion and they are not meals "furnished by the employer."

*Kowalski* is of course distinguishable upon the facts. The state troopers could eat any place they wanted, and they had complete dominion over their cash allowances and could spend it as they pleased. In the case before us the fire fighters were required to eat their meals on the employer's premises, and were required to pay for them whether they ate them or not.

The language in the *Kowalski* opinion however presents a more difficult problem. In interpreting section 119, the Court would allow deductions for meals "furnished by the employer in kind" but would disallow the deductions for "cash advances for food." It seems clear throughout the opinion and in the cases the Court discusses that the concept of "cash allowances" assumes an allowance over which the taxpayer has complete dominion. That is, he may eat as little or as much as he wants, or not at all if he wishes, and he may spend any unused portion any way he desires. We do not believe that the Court intended to rule that an allowance otherwise excludable should be denied excludability simply because it was paid in cash. We think the true holding of *Kowalski* can best be demonstrated by the following example. Let us assume that the taxpayers were given scrip for the purpose of paying for their meals. If the scrip were redeemable at any eating establishment in the vicinity or could be exchanged for cash at a bank or elsewhere, there is little doubt in the *Kowalski* factual setting but that the Court would have reached the same result. However, if the scrip were issued in the precise amount of the meal assessment; was redeemable only at the mess; and had to be surrendered whether the fireman ate or not, such an allowance in our view whether paid in scrip or cash would be deductible and we do not read *Kowalski* to the contrary.

In the light of all the circumstances in this case, the meals in question in a very real sense were "furnished in kind by the employer" upon the "business property" by means of a device conceived and established by the employer for its convenience. This being so, the taxpayers should be permitted to exclude from their gross income under the provisions of section 119 the value of these meals notwithstanding the fact that cash has been used as a simple method of implementing the plan.

We hold therefore that taxpayers may elect either to deduct the mess fees under

---

ery station was going to have a mess and everyone would comply. . . . This resolution was—was served upon the Chief Engineer, he's dutybound by the city charter and the ordinances of the city to act upon it. Rules and regulations were promulgated by the Board of Fire Commissioners which required this mess,

and the Manual of Operations was amended by the Chief Engineer which gave no leeway to the individual fireman or his officers as to whether or not he chose to be in the mess or not." *Cooper v. Commissioner*, No. 77–3815, Reporter's Transcript, Vol. II, p. 8.

section 162(a) or to exclude them from income under section 119.

We therefore affirm.

KENNEDY, Circuit Judge, dissenting:

I respectfully disagree with the majority's holding. In my view the taxpayers' expenses for meals in common with co-employees are neither business expenses deductible under I.R.C. § 162 nor meals furnished by the employer excludable under I.R.C. § 119. Inasmuch as only a plurality of seven out of·fifteen judges on the Tax Court panel found that these were business expenses, I do not believe that we are bound to give that finding decisive weight. Alternatively, since the Tax Court's opinion in *Cooper* preceded the Supreme Court's decision in *Commissioner v. Kowalski*, 434 U.S. 77, 98 S.Ct. 315, 54 L.Ed.2d 252 (1977), in which the Court construed section 119 quite narrowly to meals actually furnished by the employer, rather than meals furnished by the employees in a facility provided by the employer, I think that the Tax Court's decision should be reversed on the authority of *Kowalski.*

A result contrary to the one reached by the Tax Court does not depend upon an overly literal reading of the statute. Although deductibility under section 162, rather than exclusion of income under section 119, presents the more substantial argument for the taxpayers here, under either provision the underlying principle is the idea that forced consumption should in some cases be treated as a transaction that is not dependent on significant elements of personal choice. That is, if the convenience of the employer dictates a certain type of consumption that is likely to be different from that which a taxpayer would normally prefer, this restriction of the taxpayer's preferences is an occasion for an "accession to wealth" over which the taxpayer does not "have complete dominion." *Cf. Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431, 75 S.Ct. 473, 99 L.Ed. 483 (1955) (defining gross income in terms of quoted phrases). It appears from the record that such a restriction on the taxpayers' consumption preferences was not present in this case: the only aspect of the common dining arrangement that suited the employer was its location. The firemen were apparently free to suit their own tastes in the groceries purchased and the food prepared. This freedom points up the critical omission in the majority's hypothetical, which is the failure to specify the amount of the individual taxpayer's participation in either the choice of food or the decision of how much to spend on the meals.

The necessity in cases like these to focus on such minutiae to determine the degree of taxpayer control suggests the hair-splitting artificiality of isolating an otherwise clear type of personal expense which all taxpayers must incur in the ordinary course of living and labeling that expense "business" and therefore nontaxable for a particular, and to that extent special, class of taxpayers. Legislative exceptions such as section 119 should not be broadened beyond their explicit terms by judicial interpretation, and definitional sections such as section 162 should be interpreted in light of Congress' intention, in defining gross income, to exert the "full measure of its taxing power." *Helvering v. Clifford*, 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940). While acknowledging that the arguments so well stated by Judge Curtis are reasonable ones, I believe the principles set forth above require us to reverse the Tax Court, and I dissent from the decision not to do so.