JUAN ALBERTO ALVARADO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Alvarado v. Commissioner
Docket No. 2478-82.
United States Tax Court
T.C. Memo 1985-118; 1985 Tax Ct. Memo LEXIS 516; 49 T.C.M. (CCH) 967; T.C.M. (RIA) 85118; March 19, 1985. *516 Petitioner-fireman was required to eat his meals at the station house while on 24-hour duty. Held, petitioner may not deduct amounts paid for his share of common mess expenses or for the house fund under section 162 nor may such amounts be excluded from income under section 119. Held further, cash partial reimbursement for meals is includable in petitioner's gross income. Held further, petitioner is not entitled to an award of court costs or attorney fees. David Leeper, for the petitioner. Bernard Nelson and Thomas G. Norman, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficienies in petitioner's Federal income tax as follows: Year
Deficiency
1979
$137
1980
195
The issues are as follows: (1) Whether petitioner, a fireman, who belongs to a common mess, may deduct or exclude from income an amount equal to the cost of meals eaten at the fire station while on duty during the years 1979 and 1980; (2) whether amounts paid into a house fund during those same years are deductible or excludable from income; (3) whether payments made to petitioner by his employer from September through December *518 1980 as partial reimbursement for meal expenses incurred while on duty are includable in petitioner's gross income for the 1980 taxable year; and (4) whether petitioner is entitled to an award of attorney fees. FINDINGS OF FACT Some of the facts have been stipulated. Petitioner resided in El Paso, Texas, when this petition was filed. [1] During the years at issue, 1979 and 1980, petitioner was employed as a fireman by the City of El Paso and was assigned to Fire Station No. 22 as his permanent post of duty. At least six firemen were assigned to Station No. 22 in each of three rotating shifts. Petitioner was required by his employer to work 24-hour shifts and was not permitted to leave the fire station for personal business while on duty. Additionally, he was required to eat all of his meals at the fire station and his employer provided facilities for the storage, preparation, and consumption of these meals. He had the option to bring his own food or to participate in a common mess and he chose to participate in the common mess. A decision not to belong to the common mess would not be grounds for dismissal of the fireman nor would it reflect poorly upon him for job promotional *519 purposes. On each rotation, one person was designated as the cook of the common mess and two others were helpers. The duties of buying the groceries and preparing the meals were performed by the designated cook. It is the unwritten policy of the fire station set by the house captain to give priority for the use of the facilities for preparing and eating meals to the common mess as long as the majority of men participate in it. When those of the common mess are finished using the facilities, anyone who does not participate in the common mess is allowed to use them. Everyone has the same 1-hour period off for breakfast and lunch but employees can take several hours for dinner if they desire to do so. If a meal is missed because of an emergency call, the meal time is given to them when they return. Each fireman who participates in the common mess pays a ratable portion of the expense of the three meals per shift even though the fireman may not be able to eat the meal if interrupted by an emergency. In 1979, petitioner paid $4.25 for meals for each of his 113 shifts for a total of $480.25, *520 the amount he deducted as an ordinary and necessary business expense on his 1979 return. In 1980 petitioner paid $6 for each of his 106 shifts for a total of $636. Beginning in September 1980, the employer began partially reimbursing petitioner for meals in the amount of $3 per shift for a total of $93. This $93 amount was not included as income on his 1980 tax return. Instead, he reduced the $636 amount by $93 and deducted $543 as an ordinary and necessary business expense on his 1980 return. In addition to the common mess, each station has a house fund that the house captain oversees. The fund is used to provide personal telephone service, television, newspapers, magazines, and in some stations, food staples for all employees. During 1979 and 1980, petitioner paid $65 per year to the house fund. Petitioner did not deduct such amounts on his 1979 and 1980 Federal income tax returns but in his petition claims such amounts as additional deductions. Petitioner received full value in goods and services in exchange for his contributions to the house fund. Petitioner, like all firemen, was strongly encouraged as a matter of written policy set by the fire chief to contribute to *521 the house fund on a weekly basis. [2] The Fire Chief encourages such participation because he has found the operation of a house fund contributes to the orderly functioning of the station house and is conducive to good relations among the firemen. This policy is classified as guidance material as opposed to a general order for which the Fire Chief would have enforcement authority. Since it is only guidance material the Fire Chief cannot order the fireman to participate in the house fund and cannot fire any fireman for failure to participate. Therefore, although participation by all the firemen is vigorously promoted, it is not required as a condition of employment. *522 As a practical matter, both the common mess and house fund contribute to the orderly functioning of the fire station. The Fire Chief is concerned about the morale and organizational problems that could develop if there were not a common mess in which circumstance each employee would have to prepare a separate meal in the limited time and using the limited facilities provided by the fire department at the fire station. OPINION Petitioner is in the trade or business of being an employee. Primuth v. Commissioner,54 T.C. 374 (1970). If the expenditures in question constitute a condition of petitioner's employment they are ordinary and necessary within the meaning of section 162(a). [3] See Welch v. Helvering,290 U.S. 111 (1933). Many expenditures possess both personal and business attributes. The determination of whether the expense is primarily of a personal or business nature is a factual determination. Cooper v. Commissioner,67 T.C. 870 (1977), affd. sub nom. Sibla v. Commissioner,611 F.2d 1260 (9th Cir. 1980). *523 Common Mess
At issue is whether the payments by petitioner to the common mess are deductible under section 162(a) or are excludable under section 119. Petitioner argues that the facts of the instant case are analogous to those in Cooper v. Commissioner,supra, in which this Court found that payments to a common mess were a matter of business necessity on the part of the employer and employee. In Cooper, a fireman was required by the Los Angeles City Board of Fire Commissioners to financially participate in an organized mess at the fire station as a condition of his employment.The employer established the requirement in an effort to comply with the legal and moral obligations owed by the City to its minority employees. Petitioner paid under protest because he was subject to dismissal for noncompliance. It is clear that the requirement was not imposed for the fireman's personal convenience or benefit. This Court held that because of the unusual *524 nature of his employment, the involuntary nature of the expense incurred, his limited ability to physically participate in the mess and his employer's lack of intent to benefit him; these payments to the common mess were business rather than personal expenditures. In Sibla v. Commissioner,68 T.C. 422 (1977), affd. 611 F.2d 1260 (1980), [4] this Court again considered the issue of whether a fireman, who was financially required to pay a pro rata portion of an organized nonexclusionary mess pursuant to a desegregation plan, could deduct such amounts as a business expense. The fireman was required by the City Board of Fire Commissioners of the City of Los Angeles to pay a per diem amount for his participation in the mess even if he brought his own lunch or for some other reason did not eat the meals prepared in the mess. The Court reexamined the holding of the Cooper case and explained that it was not predicated on the fact that the taxpayer protested the payments or that he missed some meals but rather on the nature of the requirement for the payment. The Court found the facts before it to be indistinguishable from the facts of the Cooper *525 case and thus, the expenses were found to be deductible.
The facts of the instant case are distinguishable from those in the Cooper and Sibla cases. In this case, petitioner was not required to pay for the common mess as a condition of his employment. Although he was strongly encouraged to participate, he was not penalized if he did not. The fact that petitioner may have felt peer pressure to join the common mess, or that he felt it was his only practical choice, or that his employer was able to derive some incidental benefit from his joining the common mess does not transform his own voluntary choice into a condition of his employment. Upon facts analogous to the instant case and when there was no requirement to contribute financially to an organized mess, this Court has *526 found payments to a common mess to be nondeductible expenditures under section 262. Duggan v. Commissioner,77 T.C. 911 (1981); Banks v. Commissioner,T.C. Memo. 1981-490; Murphey v. Commissioner,T.C. Memo. 1975-317. In Duggan, taxpayer was required to eat meals at the fire station while on duty during his 24-hour shifts. During the year at issue, there were 12 persons working each shift. Meals were prepared in the same fashion as the instant case, i.e., by designating one cook, two helpers, the cook purchased the groceries, etc. Participation in the mess was not a condition of employment, so that employees could bring their own food if they desired to do so. Since the contributions were not required by the employer, the taxpayer did not have to pay for meals he did not eat and the mess was organized by employees themselves for their own convenience, this Court found the expenditures to be nondeductible. [5]
*527 Similarly, in the instant case petitioner was not required as a condition of employment to pay a pro rata share of the common mess expenses, the mess was run by the employees for their own convenience, petitioner was not obligated to belong and thus pay for the meals but rather voluntarily chose to do so. If meals were missed because of emergency calls, petitioner was given time for his meal on returning from the call. If petitioner elected to bring his own food from home, he was not required additionally to pay for the common mess. Thus, we find that petitioner's payments to the common mess were nondeductible personal expenses. Alternatively, petitioner argues that section 119 applies. We find section 119 to be inapplicable. Under section 119, an amount equal to the value of any meals furnished to an employee by his employer for the employer's convenience may be excluded from gross income. This exclusionary rule applies if the four following conditions are met: (1) The meals are furnished by the employer; (2) there is a charge for the meals which must be paid irrespective of whether *528 the employee chooses to eat the meals and irrespective of how much he eats; (3) the meals are furnished for the convenience of the employer; and (4) the charge equals the value of the meals. [6] It is clear from the evidence presented that petitioner, being free to choose whether he wanted to belong to the common mess, was not financially required to pay a pro rata share of its cost as a condition of his employment. Petitioner cannot fit within the section 119 exclusion and the facts of this case are distinguishable from those of Sibla v. Commissioner,611 F.2d 1260 (9th Cir. 1980). See Sloyan v. Commissioner,T.C. Memo. 1985-41 (where such payments were disallowed on analogous facts to the instant case). House Fund
Petitioner asserts that contributions made to the house fund were "required" by the employer's written policy. Furthermore, petitioner asserts that the house fund was a practical necessity to the operation of the fire station and thus, a necessity to his employer *529 as well as to petitioner. Respondent contends that these contributions were made for petitioner's convenience and such expenditures were not required as a condition of petitioner's employment. Thus, these amounts are not deductible under section 162 and their deduction is explicitly prohibited under section 262. It is clear that petitioner was aware of the department's written policy on the fund and was strongly encouraged by his employer to participate in it. However, such participation, although encouraged, was not required as a condition of his employment. Neither the fact that petitioner considered such participation a personal practical necessity or the fact that fire department officials believed it contributed to good relations among firemen make such participation a condition of petitioner's employment. The evidence shows that petitioner could not be ordered by his Fire Chief to join the house fund nor would he be fired for failure to participate. [7] Even though we are sympathetic to petitioner's contention that it was a practical necessity for him to contribute to the fund, petitioner was not required by his employer to participate in the house fund and is not allowed *530 a deduction for such amounts. Section 262; Duggan v. Commissioner,supra.
Petitioner alternatively argues section 119 applies. The house fund was used to provide items such as television and magazines as well as food staples. Thus, the items purchased with the house fund simply cannot be equated with meals furnished by and for the convenience of the employer. Even though the payments to the house fund were strongly encouraged, they were not required. We have considered the requirements under section 119 and we find that petitioner cannot meet the four conditions as described above; Sibla v. Commissioner,supra; cf. Sloyan v. Commissioner,T.C. Memo 1985-41. The Cash Reimbursement
The $3 cash reimbursement for meals that began in September of 1980 and totaled $93 for that taxable year is includable in petitioner's gross income. Section 61; Commissioner v. Kowalski,434 U.S. 77 (1977); *531 Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955); Eisner v. Macomber,252 U.S. 189 (1920). In Commissioner v. Kowalski,supra,the Supreme Court held that section 119 provides an exclusion from gross income for meals or lodging furnished in kind for the convenience of the employer but it does not apply to cash reimbursements. They are funds over which the taxpayer has complete dominion and control and they are not analogous to meals "furnished by the employer." Since at issue here we have cash payments over which petitioner had complete dominion and control, we find such amounts are taxable receipts not excludable under section 119 and are includable under section 61. Attorney Fees
Petitioner has requested that this Court award him attorney fees. The petition was filed on February 2, 1982, and amended on November 8, 1983. Section 7430 allows for the award of Court costs and certain fees and is effective with respect to civil *532 actions or proceedings commenced after February 28, 1983. The Court has no jurisdiction to award attorney fees in cases commenced prior to March 1, 1983. McQuiston v. Commissioner,78 T.C. 807 (1982), affd. without published opinion 711 F.2d 1064 (9th Cir. 1983); Key Buick Co. v. Commissioner,68 T.C. 178 (1977), affd. 613 F.2d 1306 (5th Cir. 1980). This case was commenced on February 2, 1982, and thus, petitioner is ineligible for such an award. Rule 41(d). Decision will be entered for the respondent.
Footnotes
1. The petition in this case was filed on Feb. 2, 1982, and was amended on Nov. 8, 1983.↩
2. The following are excerpts from written policy on house funds. The policy substantially reflects the policy in effect during the years at issue. HOUSE FUNDS
House Funds House funds shall be administered in accordance with the following guidelines. The authority to establish such guidelines is hereby granted, in that said activity takes place on Fire Department premises. These guidelines are established in order to create a uniform means of administering the house fund, and collecting dues: 1. The house Captain shall be responsible for the collection of house dues and the administration of the house fund. The Captain shall maintain an open set of books to any member desiring to review said books. 2. All members have equal voice and vote in regards to any matters concerning the house fund. 3. Collection of house dues. 3.1 House dues shall be collected on the shift coming on duty on payday or the first shift returning to duty from days off immediately after payday. 3.2 All members shall be in the house fund and shall pay equal dues, except as follows. 3.3 Temporary personnel shall not be required to pay for out of the ordinary expenses such as televisions. 3.4 Personnel whose vacation or other leave includes a payday shall not be required to pay house dues for that payday when returning to work if the leave is for three shifts or more. House dues will be paid on leaves of less than three shifts. 3.5 Temporary personnel shall pay house dues at the station to which the Deputy Chief has assigned them; generally, to replace permanently assigned personnel for three shifts or more. In most cases, temporarily assigned personnel will not pay house dues at a station unless assigned to that station for three shifts or more. The Deputy Chief shall have final authority to resolve conflicts regarding this matter. Note: It is possible that a member may not work at his assigned station the majority of his shifts during a pay period. However, he shall still be required to pay at his assigned station, as determined by the Deputy Chief. If the matter is in question, the officer of the company the member is working at on collection day shall confer with the Deputy Chief for determination.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
4. This Court has also considered this issue in Belt v. Commissioner,T.C. Memo. 1984-167 and found amounts paid to a common mess to be a deductible expense under section 162. In Belt,↩ however, the parties stipulated that the taxpayer was required to belong to the common mess.
5. A similar decision was rendered in Banks v. Commissioner,T.C. Memo. 1981-490, in which a fireman was required to eat all meals he ate while on duty during his 24-hour shift at the fire station. Cooking facilities were provided. There was no requirement that taxpayer contribute financially to an organized mess. The Court found that the decision to eat or not to eat and the amount expended thereon was wholly a matter of personal choice. Such expenditures were nondeductible under sec. 262. In Murphey v. Commissioner,T.C. Memo. 1975-317, a fireman, who was not allowed to leave the firehouse for meals while on duty, was provided with facilities for preparing and eating his meals but was required to bring his own food. Citing Sutter v. Commissioner,21 T.C. 170, 174↩ (1953), this Court found that taxpayer would have incurred the cost of the food whether or not he was a fireman and thus such costs were nondeductible personal expenses.
6. These conditions have been set forth in Sibla v. Commissioner,611 F.2d 1260, 1264 (9th Cir. 1980), affg. 68 T.C. 422↩ (1977).
7. Even though the written policy upon which petitioner relies appears to require contributions to this fund, the testimony of the Fire Chief clearly establishes that such "requirement" was illusory and unenforceable.↩