Jon R. and Carol J. POLLEI, and
Harry W. and Renee L. Patrick,
Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–Appellee.

Nos. 87–1159, 87–1160.

United States Court of Appeals,
Tenth Circuit.

June 13, 1989.

Steven D. Woodland, of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for petitioners-appellants.

Ann Belanger Durney, Tax Div., Dept. of Justice, Washington, D.C. (Roger M. Olsen, Asst. Atty. Gen., Michael L. Paup and B. Paul Klein with her on the brief), for respondent-appellee.

Before HOLLOWAY, SEYMOUR, and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Petitioners John R. Pollei and Harry W. Patrick[1] appeal from the United States Tax Court's decision upholding deficiencies assessed against their federal income tax returns for 1981. At issue is whether petitioners may deduct as "ordinary and necessary" business expenses under section 162(a) of the Internal Revenue Code, 26 U.S.C. § 162(a) (1982), maintenance and operating costs arising from their use of personally-owned, unmarked police cars to travel between their residences and police headquarters when they are required to be on duty from the time they leave their homes. We disagree with the tax court's conclusion that such travel constitutes nondeductible personal "commuting", and we therefore reverse.

I.

Only petitioners presented evidence in this case, and the facts are basically undisputed. In 1981, petitioners Pollei and Patrick were employed as captains by the Salt Lake City Police Department ("SLCPD"). Prior to September 29, 1980, the SLCPD supplied petitioners and other police officers with city-owned, unmarked vehicles for their full-time use. On that date, in compliance with the Salt Lake City mayor's directive to cut costs, the SLCPD Chief of

---

1. Carol J. Pollei and Renee L. Patrick are parties to this action solely because they filed joint federal income tax returns with their husbands in 1981.

Police ordered "command-level" officers to provide their own transportation during their "tour of duty". Petitioners, two of nine captains on the force, fell into that category. Each command-level officer was given a monthly $250 car allowance. By that same order, petitioners' tours of duty were extended to begin and end when the officers left for work or arrived home in their cars, rather than when they actually arrived at or left from police headquarters. SLCPD provided and installed necessary equipment in each officer's privately-owned vehicle to enable its use as an unmarked police car. Officers were required to notify the police dispatcher before leaving, and on arriving home, and were "on call" during their travel time to and from headquarters. While en route to headquarters or their homes, petitioners were expected to monitor the radio channels to be aware of the ongoing police activities, observe their subordinate officers in the field, patrol the streets, and respond to dispatcher calls for assistance. Petitioners were also required to call in any time they used the unmarked cars, whether they were on or off duty at the time.

On their 1981 federal income tax returns, petitioners claimed business expense deductions in connection with the use of their unmarked cars. Respondent Internal Revenue Service disallowed that portion of the deduction relating to petitioners' daily operation of their vehicles between their homes and headquarters, and assessed deficiencies against their 1981 returns. Petitioners sought the tax court's redetermination of those deficiencies. The tax court concluded that petitioners were not engaged in business activities during the time spent traveling between their homes and headquarters, but instead were merely commuting to work, and that the related expenses therefore were nondeductible. *See Pollei v. Commissioner*, 87 T.C. 869, 872–73 (1986). Petitioners timely appealed that decision to this court.

## II.

■ Our first concern is the appropriate standard of review. The IRS argues that whether petitioners were commuting is an issue of fact, subject to the clearly erroneous standard of review. Petitioners contend that they are challenging the tax court's legal conclusions, compelling de novo review.

Under section 7482(a) of the Internal Revenue Code, 26 U.S.C.A. § 7482(a) (1976) (current version at 26 U.S.C.A. § 7482(a) (West Supp.1989)), this Court must review tax court decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." We have held that the application of section 162(a) to basically undisputed facts is an ultimate question not subject to the clearly erroneous rule. *Colorado Springs Nat'l Bank v. United States*, 505 F.2d 1185, 1189 (10th Cir.1974). That is so because it is a mixed question of law and fact in which "the facts are admitted or established and the law is undisputed; the sole issue is whether the law applied to the facts satisfies the statutory standard." *Supre v. Ricketts*, 792 F.2d 958, 961 (10th Cir.1986) (citing *Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790–91 n. 19, 72 L.Ed.2d 66 (1982)). As we noted in *Supre*, "[w]here the mixed question involves primarily a factual inquiry, the clearly erroneous standard is appropriate. If, however, the mixed question primarily involves the consideration of legal principles, then a *de novo* review by the appellate court is appropriate." 792 F.2d at 961. Here, petitioners primarily object to conclusions drawn by the tax court in arriving at its determination that petitioners' expenses in issue were not deductible. We are equally as able as the tax court to draw conclusions from the undisputed facts presented. *See Colorado Springs Nat'l Bank*, 505 F.2d at 1189. Thus, we review de novo the tax court's application of the law to the facts before us. To the extent we review pure fact findings made by the Tax Court, of course, we apply the clearly erroneous test. Fed. R.Civ.P. 52(a).

## III.

■ Section 162(a) of the Internal Revenue Code provides a tax deduction for all

"ordinary and necessary" business expenses. Section 262 of the Code disallows the deduction of "personal, living, or family expenses." 26 U.S.C. § 262 (1982) (current version at 26 U.S.C.A. § 262 (West Supp. 1989)). Petitioners concede that ordinary commuting expenses constitute nondeductible personal expenditures. *See Commissioner v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946). Petitioners argue, however, that they are not commuting between their homes and headquarters because they are on duty, performing services for the police department on behalf of the public. We agree with petitioners that the tax court erred in determining that their travel to and from headquarters was not a deductible business expense under section 162(a).

After the September 29, 1980 order, the SLCPD considered petitioners to be on duty while traveling to and from headquarters. They were required to check in and out with the dispatcher upon leaving and arriving home. They could not use ordinary vehicles to provide their own transportation during their tours of duty. They were expected to drive to work in vehicles specially equipped with a siren, emergency lights, and a police radio to enable them to monitor the six-channel police radio, as well as supervise subordinates' responses to dispatcher calls, and respond to emergency and other assistance situations. Officers were disciplined for a failure to comply with these requirements. Testimony from the SLCPD Chief of Police indicated that by requiring petitioners' tours of duty to include their travel time to and from headquarters, the city benefitted from an increase in the amount of police supervision and patrol services, as well as from quicker response times for emergency and police reinforcement situations. These benefits were gained without any cost to the city for the increase in petitioners' service.

Notwithstanding this undisputed evidence, the tax court concluded that "petitioners were not engaged in their jobs (business activity) during the time they traveled to and from headquarters." Rec., vol. I, doc 16, at 6. We disagree with this conclusion. Petitioners and their two witnesses emphasized in their testimony the supervisory and inspectional function performed by SLCPD commanders in their travels to and from headquarters. Chief of Police E.L. Willoughby testified that each of the petitioners had "a basic responsibility of inspectional services" which had "nothing to do with sitting behind a desk, and signing reports, and counting numbers, and manipulating manpower," but which required petitioners and other command-level officers to go out into the field. Rec., vol. II, at 23.[2] Petitioner Patrick testified that he performed supervisory, inspectional functions in driving to and from headquarters, as he could then monitor his subordinate officers' communications with the dispatcher. Petitioners' expert witness emphasized that a significant aspect of an officer's travel to and from headquarters:

"[i]s the inspectional function that they will provide when they're going and coming to work. They will then intentionally look for traffic hazards. They will be listening to the radio about traffic flow issues. They will be listening for floods. They will be listening to law enforcement officers in need of help, or other departments in the need of help. It puts them in tune with what's going on in the department ... at any given time."

*Id.* at 83.

The tax court concluded that petitioners' responsibilities were no greater when in transit to and from headquarters than when petitioners used their unmarked vehicles for personal errands. This is a fact finding that we hold clearly erroneous because it is not supported by the record. Like all police officers, petitioners were required to check in with the dispatcher

**2.** Chief Willoughby also noted that each of the petitioners "is responsible, the minute that he gets in service, that anything that comes within view, or that he hears over the police radio, draws that to his attention, that if it's within a short distance from him, or her, then the captains are to respond to that and monitor that as an inspectional function, to see that it's properly being carried out." Rec., vol. II, at 27.

when using their cars for personal reasons in their off-duty hours, and were thus considered available to respond to calls for assistance. However, the tax court's conclusion fails to acknowledge petitioners' supervisory roles and the SLCPD's reliance on their daily drive to and from headquarters. By requiring petitioners' tour of duty to begin with their departure from and end upon their arrival at home, the SLCPD was provided with a regular addition to the number of commanders supervising police activities. Petitioners' occasional or happenstance use of their unmarked cars on personal business while off-duty could not provide the SLCPD with a similar expectation of a regular increment in its supervisory staff. The regularity of petitioners' daily travels to headquarters was noted by their expert witness, who testified that commanders, such as petitioners, would be more inclined to take care of a routine matter observed while traveling to and from headquarters than they would while on personal errands while off-duty.[3] The record demonstrates that petitioners' daily travel time to and from headquarters was spent in the performance of job-related activities directly pertaining to their regular duties as SLCPD police captains.

The IRS argues that allowing petitioners to claim these expenses will result in a deluge of claims for similar exceptions from taxpayers who may routinely or even occasionally perform work-related tasks during their commute to work. It fears, for example, that an employee using a portable dictaphone or a car telephone while driving to work could claim deductions for commuting expenses under section 162(a). We view the facts and circumstances in this case as sufficiently unique to preclude that fear from becoming reality.

We think it unlikely that most employees could justifiably claim their performance of work-related tasks during their commute to their jobs as a condition of their employment. Rather, it is more likely that most employees perform these tasks voluntarily,

perhaps for their convenience or to enhance their work record. Petitioners' performance of supervisory and patrol responsibilities as they drove to headquarters was mandated by the SLCPD order of September 29, 1980, and petitioners were subject to discipline if they did not carry out those responsibilities. Petitioners had no other option but to drive their unmarked cars between their homes and headquarters. Use of public transportation was not a viable alternative for petitioners, who testified that they could not thereby monitor the police radio and respond to emergencies or dispatcher calls while traveling to and from headquarters. Petitioners' situation thus can be distinguished from cases in which a commuter's choice of residence location or personal convenience were cited as reasons for the disallowance of commuting expenses. *See, e.g., McCabe v. Commissioner*, 688 F.2d 102, 107 (2d Cir.) (police officer not entitled to deduct commuting expenses when use of personal auto dictated by choice of residence location rather than need to carry service revolver), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed. 2d 166 (1982); *Fausner v. Commissioner*, 413 U.S. 838, 93 S.Ct. 2820, 37 L.Ed.2d 996 (1973) (need to carry incidentals of work while commuting doesn't transform commute costs from personal into business expenses).

When conditions of employment restrict an employee's discretion in typically personal choices such as meals eaten during working hours or mode of commuting to work, "that which may be a personal expense under some circumstances can when circumstances prescribed by company regulations, directives and conditions, lose its character as a personal expense and take on the color of a business expense." *Sibla v. Commissioner*, 611 F.2d 1260, 1262 (9th Cir.1980). Meal expenses, like commuting expenses, are usually deemed to be personal in nature and not deductible under section 262. *See* Treas.Reg. § 1.262–1(b)(5) (as amended in 1972). In *Sibla*, expenses

---

**3.** The example given by this witness to illustrate a routine matter for which a commander would take the time on his daily trips to headquarters was that of stopping to correct a subordinate's improper wearing of his police uniform.

incurred by two firefighters' in the form of mandatory contributions to a station meal fund were held to qualify as "ordinary and necessary" expenses under section 162(a). 611 F.2d at 1262. The firefighters could not bring their own meals or eat outside the station in lieu of contributing to the meal fund. *Id.* at 1261. The firefighters occasionally missed the meals prepared at the fire station, while away on fire department business, but received no reimbursement for the missed meals. *Id.*

More recently, the Eighth Circuit has held meal expenses incurred by Minnesota state highway troopers to be deductible business expenses under section 162(a), rather than nondeductible personal expenses. *Christey v. United States,* 841 F.2d 809, 813 (8th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1131, 103 L.Ed.2d 193 (1989). The troopers there incurred meal expenses while on duty and in compliance with the state highway patrol's regulations regarding on-duty meals. *Id.* at 810. Stressing that the troopers should be visible and available to the public while taking on-duty meals, the patrol regulated the scheduling and length of the meal break, as well as the restaurants at which meal breaks could be taken. *Id.* The troopers were prohibited from bringing meals from home or eating in their patrol cars. *Id.* During on-duty meal breaks, troopers were subject to interruptions, both from the patrol dispatcher and from inquiries by the general public regarding weather, road conditions, traffic laws and related subjects. Because of such interruptions, troopers frequently could not finish meals for which they had paid. *Id.*

Other factors limiting the potential number of successful claims under our holding today are the public service and safety aspects of petitioners' employment, factors reflected in the SLCPD's orders directing petitioners mode of daily travel to and from headquarters. Petitioners' responsibilities to the public are similar to those of the firefighters in *Sibla* and the highway patrol troopers in *Christey.* In *Sibla,* the court referred to the tax court's recognition of the "unusual nature" of the firefighters' employment in permitting the de-duction of meal expenses. 611 F.2d at 1262. In *Christey,* the court noted that the purpose of the restrictions placed on the troopers' on-duty meals was to promote public safety and obedience to the law by making the troopers visible and available to the public during on-duty meal breaks. 841 F.2d at 810. Most employees cannot legitimately claim a similar public service or safety component to their jobs, and so will be unable to justify the deduction of commuting expenses in reliance on our decision here.

The SLCPD's September 1980 order created restrictive conditions of employment similar to those found in *Sibla* and *Christey.* Like the firefighters who were required to contribute to the station meal fund in *Sibla,* petitioners here had no choice in providing their transportation to and from headquarters other than with a personally-owned, police-equipped car. Like the troopers' meal breaks in *Christey,* petitioners' travel time to and from headquarters, ordinarily a matter of personal choice, was governed by their employers' policy which caused them to be "on duty" during those times. Following the rationale expressed in the *Christey* and *Sibla* decisions, we conclude that the employment conditions imposed upon petitioners caused them to incur expenses in maintaining and operating their personally-owned vehicles while traveling to and from SLCPD headquarters and that such expenses should be deductible under section 162(a).

The decision of the tax court is reversed and judgment will be entered for petitioners.