LAMBERT M. WARE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ware v. Commissioner
Docket No. 16383-81.
United States Tax Court
T.C. Memo 1986-406; 1986 Tax Ct. Memo LEXIS 205; 52 T.C.M. (CCH) 315; T.C.M. (RIA) 86406; August 27, 1986. Gregory L. Williams and John E. Cicero II, for the petitioner. Jane T. Dickinson, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Sec. 6653(a) [1]
Year
Deficiency
Addition to Tax
1977
$23,406.20
1978
26,218.47
$1,310.92
After numerous concessions by both parties, the following issues remain for decision: (1) Whether petitioner *208 is entitled to certain rental expenses and rental depreciation deductions with respect to a personal residence; (2) Whether petitioner is entitled to employee business expense deductions in connection with his professional status as a harbor ship pilot; (3) Whether petitioner is entitled to a business expense deduction in 1978 for wages allegedly paid to his driver; (4) Whether petitioner is entitled to a new jobs credit for an individual he claims to have hired as his driver in 1978; (5) Whether depreciation deductions should be allowed with regard to certain items of personal property that petitioner claims to have used in his trade or business; (6) Whether an investment tax credit should be allowed for certain tangible personal property placed in service by petitioner in 1977; (7) Whether petitioner is entitled to a deduction for certain amounts allegedly expended for tax planning and return preparation; and (8) Whether petitioner is liable for the addition to tax pursuant to section 6653(a) for 1978. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. *209 Lambert M. Ware (hereinafter petitioner) resided in Tampa, Florida, when he filed his petition in this case. In July 1975, petitioner and his wife, Dorothea, acquired residential property located on White Trout Lane (White Trout) from William E. and Marilyn B. Gatlin. Before purchasing the White Trout residence, petitioner and Dorothea entered into an agreement which provided that any asset that they purchased jointly would be held by them in proportion to the relative amounts each had invested. On December 22, 1976, petitioner and Dorothea Ware were divorced. In January 1977, petitioner purchased Dorothea's ownership interest in White Trout by executing a promissory note to her for $21,000. The purchase price reflected Dorothea's original investment of $10,000, plus $11,000 in appreciation. In December 1977, petitioner gave his former wife a mortgage on White Trout in the amount of $21,000 to serve as security for his promissory note. On December 30, 1977, Dorothea's ownership interest in the property was conveyed to petitioner by way of a quitclaim deed recorded on January 24, 1978. Pursuant to the terms of a lease executed December 30, 1977, but made retroactive to *210 January 1, 1977, Dorothea was to lease White Trout for a 6-year period at a fixed rate of $650 per month. Despite the 6-year term provided for by the lease, Dorothea only occupied the residence until July 15, 1978. Although petitioner initially leased the house to Dorothea in a furnished condition, the lease was modified to provide that as of February 1, 1978, White Trout would be rented in an unfurnished condition for $500 per month. During 1977 and 1978, petitioner made first and second mortgage payments (including principal and interest) on the White Trout property of $587 per month and $375.28 per month, respectively. Additionally, petitioner paid for all expenses associated with the residence during 1977 and 1978, although he was not required by the express terms of the lease to pay for expenses other than for major repairs. On his 1977 and 1978 Federal income tax returns, petitioner reported as income the rental payments he received from Dorothea. He deducted rental income expenses associated with White Trout in the amount of $12,809 in 1977 and $3,292 in 1978. Petitioner also claimed depreciation deductions totaling $8,904 in 1977 and $9,111 in 1978. The assets that *211 petitioner sought to depreciate included the house, certain appliances, the cost of a new roof, and the furnishings associated with the White Trout residence. Respondent disallowed the rental expense and the depreciation deductions for both years because, as determined by respondent, petitioner did not hold the White Trout property for the production of income. During the years in issue, petitioner was a Tampa Bay harbor pilot who was required to be on call 24 hours a day for approximately 180 days per year. Ships coming in and out of the port area around Tampa Bay must be piloted by someone familiar with the region. Each pilot employed in the Tampa Bay area, including petitioner, is a partner in the Tampa Bay Pilot Association. Ships entering and leaving Tampa Bay routinely contact the Association's radio dispatcher when they require navigation in or out of port. The Association maintains a facility on an island called Egmont Key, where there is a radio dispatching room and several small power boats. As a member of the Association, petitioner is required to own and personally maintain a small cottage on Egmont Key. The cottage was used by petitioner solely for business purposes *212 and served as a place to rest between job duties while remaining at a location close to where petitioner's subsequent assignments would originate. The Association required petitioner to be accessible during the entire 24-hour period that he was on call. In addition, because petitioner's job assignments during the years in question took him to many locations in the Tampa Bay area at varied times, he often made arrangements for a driver to pick him up and transport him to his next assignment. Petitioner employed Nancy Jo Midulla (Midulla) in the latter half of 1978 primarily as his driver. Midulla also performed some incidental bookkeeping services. On his 1977 and 1978 Federal income tax returns, petitioner claimed the following business expense deductions: 1977
1978
Answering Service, telephone and
remote pager (beeper)
$1,092
$1,556
Egmont Key cottage
maintenance, utilities and
312
2,326
telephone
Payroll (driver) - wages
6,213
Payroll (driver) - taxes
587
$1,404
$10,682
These deductions were disallowed because, according to respondent, petitioner failed to show that they were ordinary and necessary business expenses *213 within the meaning of section 162. Respondent also determined that petitioner failed to provide adequate substantiation for the claimed expenditures. Petitioner claimed a tax credit for a new employee pursuant to section 44B. The new jobs credit was disallowed by respondent because petitioner failed to establish the extent to which he paid for services rendered to him in the course of his trade or business. In 1977, petitioner purchased two automobiles, a telephone recording device, an air conditioner, and a lawn mower. Petitioner claimed both depreciation and investment tax credits alleging that these items constitute tangible property used in his trade or business. The parties agree that petitioner is entitled to a depreciation deduction in each year equal to 12.5 percent of the bases of the automobiles, or $1,960.60 per year for 1977 and 1978. The depreciation deductions and the investment tax credit for the telephone recording device, the air conditioner, and the lawn mower remain at issue. Because the percentage of automobile use attributable to petitioner's trade or business is 12.5 percent, petitioner concedes that he is only entitled to an investment tax credit based *214 on such business use. Petitioner claimed deductions for tax planning and return preparation services on his 1977 and 1978 returns in the amounts of $3,001 and $4,000, respectively. Petitioner alleges that the above amounts are deductible pursuant to section 212(3) as ordinary and necessary expenses paid or incurred with regard to the determination, collection, or refund of any tax. Respondent disallowed these deductions on the ground that petitioner's claimed deductions were not shown to be expenditures made solely with regard to the preparation of petitioner's 1977 and 1978 income tax returns. Finally, respondent determined that petitioner is liable for the addition to tax pursuant to section 6653(a) for 1978. Petitioner employed a certified public accountant to prepare his 1978 Federal income tax return. He relied exclusively on his accountant's tax counseling and advice. Petitioner was unsophisticated in tax matters and had to completely depend on his accountant to advise him regarding the tax consequences of the transactions at issue. OPINION I. White Trout Rental Expenses and Depreciation
Respondent argues that petitioner is not entitled to depreciation deductions *215 pursuant to section 167 or maintenance expense deductions pursuant to section 212(2) because petitioner did not hold the White Trout residence with a profit objective within the meaning of section 183. We agree with respondent. Petitioner acquired the property in 1975 with his wife, Dorothea Hover. Dorothea and petitioner were divorced in December 1976 and, pursuant to a lease executed on December 30, 1977, but made retroactive to January 1, 1977, Dorothea was to lease the residence from petitioner. Although the lease specified that the house would be rented with furnishings for a 6-year period at the rate of $650 per month, Dorthea remained in the residence only until July 15, 1978. The agreement was subsequently modified effective February 1, 1978 to provide that the residence would be rented in an unfurnished condition for $500 per month. If an activity is not engaged in for profit, section 183 allows deductions for ordinary and necessary expenses arising from the activity only to the extent of the gross income derived from the activity, less those deductions (such as mortgage interest and real estate taxes) which are allowable in any event. *216 Sutton v. Commissioner,84 T.C. 210, 221, 222 (1985). [2] The absence of a profit is not itself determinative, but the activity must be of such a nature that the taxpayer's profit objective is bona fide. Dreicer v. Commissioner,78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1204 (D.C. Cir. 1983). Section 1.183-2(b), Income Tax Regs., sets forth nine separate factors to be considered in determining whether an activity is "not engaged in for profit." The factors are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying *217 on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. We will consider each factor in the order listed. (1) The manner in which the taxpayer carries on the activity - The fact that a taxpayer carries on an activity in a businesslike manner and maintains complete books and records may indicate that the activity was engaged in for profit. No evidence exists in the instant case to indicate that petitioner took even the most rudimentary steps to lease White Trout in a profitable manner. No evidence was presented regarding the fair rental value of the White Trout residence. We do note, however, that the lease agreement entered into between petitioner and Dorothea appears to have been significantly influenced by their recent divorce and property settlement. The failure to lease property at fair rental value is a strong indication that the taxpayer did not have a bona fide profit objective. *218 Jasionowski v. Commissioner,66 T.C. 312, 322 (1976). Petitioner indicated in his anemded answers to interrogatories that his former wife Dorothea would testify as to the nature of the lease agreement, but she was never called as a witness. The natural inference to be drawn from Dorothea's failure to testify is that her testimony would not have been favorable to petitioner. Pollack v. Commissioner,47 T.C. 92 (1966), affd. 392 F.2d 409 (5th Cir. 1968). Petitioner failed to offer any evidence to indicate that he had in any way advertised the property for rent or that he had sought tenants other than his former wife for the White Trout residence. In addition, petitioner's obligations relative to the first and second mortgages on the White Trout property were well in excess of the rental income. Furthermore, petitioner paid for all improvements made to the residence as well as certain maintenance expenses not required under the express terms of the lease. In short, the evidence in the record does not establish that petitioner conducted the rental of White Trout in a businesslike manner. (2) The expertise of the taxpayer or his professional *219 advisors - The record does not indicate that petitioner prepared for the activity by a study or survey of accepted rental practices. As respondent points out, the circumstances surrounding the lease between petitioner and Dorothea make it appear to be more in the nature of a property settlement. In addition, there is no indication that petitioner sought expert advice in this matter. (3) The time and effort expended by the taxpayer in carrying on the activity - Petitioner presented no evidence to indicate that he devoted significant time and effort to conducting the rental activity. (4) Expectation that assets utilized in the activity will appreciate in value - The evidence in the record does establish that the White Trout residence was appreciating in value during the years in issue. Petitioner argues that although he failed to show a profit initially, the fact that he leased the residence to his former wife while the property was appreciating is suggestive of a profit objective on his part. Anticipated appreciation in the value of residential property is certainly a relevant factor, but it is not alone determinative. *220 "[I]f the anticipation of eventually selling the house at a profit were in itself sufficient to establish that the property was held with a profit-making intent, rare indeed would be the homeowner who purchased a home several years ago who could not make the same claim." Jasionowski v. Commissioner,supra at 323. (Citations omitted.) [3]
(5) The success of the Taxpayer in carrying on other similar or dissimilar activities - Petitioner has not shown that he has been engaged in any other rental activities, successful or otherwise, in the past. (6) The taxpayer's history of income or losses with regard to the activity - The regulations indicate that a series of losses in the initial stages of an activity may not necessarily show that the activity was not engaged in for profit. Section 1.183-2(b)(6), Income Tax Regs., goes on to provide, however, that where the losses continue beyond the period that is generally necessary to bring the endeavor into a profit making mode, such losses may indicate that the activity is not being engaged in for profit. Petitioner offered *221 no evidence to suggest that the alleged conversion of his personal residence to a rental income producing property involved major nonrecurrent start-up expenses. Even if we were to ignore the monies expended by petitioner for real estate taxes, maintenance and improvements, the amount that he was obligated to pay with regard to his first and second mortgages on the White Trout residence were alone sufficient to totally negate any potential profit from the activity. (7) The amount of occasional profits, if any, which are earned - The regulations provide that substantial profits, though at infrequent intervals, could be indicative of a profit motive. In addition, a profit motive can be found to exist where petitioner has an opportunity to earn a very substantial gain from a highly speculative activity. Section 1.183-2(b)(7), Income Tax Regs. Neither of the above factual scenarios, however, are analogous to the set of circumstances present in this case. Petitioner did not realize any profit from his activities, frequent or otherwise. Additionally, the conversion of residential property into income producing rental property is not generally viewed as a highly speculative activity. *222 (8) The financial status of the taxpayer - Section 1.183-2(b)(8), Income Tax Regs., indicates that a profit motive may be discerned where a taxpayer does not have substantial income from sources other than the activity in question. It is quite evident that petitioner's primary source of income in 1977 and 1978 came from his activities as a harbor pilot in the Tampa Bay area and not from his rental activities. (9) Elements of personal pleasure or recreation - The regulations imply that the presence of personal motives associated with engaging in an activity may be an indication that the activity was not engaged in for profit. We recognize that the White Trout property did not provide petitioner with the type of recreational enjoyment or satisfaction that would often be associated with a vacation home. However, the evidence strongly suggests that petitioner's personal obligations may have played a major role in both the determination of the amount of rent charged, and petitioner's willingness to assume responsibility for all maintenance and improvements associated with the property. We think the circumstances surrounding the lease indicate that the contractual arrangement *223 struck between petitioner and his former wife was flavored by their recent divorce and was not entered into with the primary purpose and objective of making a profit. Petitioner has failed to carry his burden of proof with respect to establishing that his rental of the White Trout residence to Dorothea in 1977 and part of 1978 qualified as an activity engaged in for profit. In addition, his testimony that a third party had leased a portion of the home in the latter part of 1978 was uncorroborated. Petitioner had indicated both in his amended answers to interrogatories and in his trial memorandum that Mr. Ralph Schumaker would testify that he leased a portion of the residence in 1978. No explanation was given for the absence of this witness at the trial and we therefore can infer that Mr. Schumaker's testimony would not have been favorable to petitioner. "The burden of proof is upon [petitioner] and we cannot assume that the missing evidence would have been favorable to [him]." Kamborian v. Commissioner,56 T.C. 847, 869 (1971), affd. *224 469 F.2d 219 (1st Cir. 1972). II. Employee Business Expenses
A. Expenses Incurred With Regard to Petitioner's Pilot Station Cottage on Egmont Key
Petitioner is a harbor pilot and a partner in the Tampa Bay Pilot Association. Ships coming in and out of the port area around Tampa Bay routinely contact the Pilot Association's dispatching unit at Egmont Key. Captain Cyrus Epler, another Tampa Bay pilot, testified that each pilot is required to own and maintain a cottage on Egmont Key as a condition of membership in the Association. Captain Epler also testified that the expenses associated with building and maintaining the island cottage are solely the responsibility of the individual harbor pilot. On his 1977 and 1978 Federal income tax returns, petitioner claimed deductions pursuant to section 162[4] in amounts totaling $312 and $2,326, respectively, for utility and maintenance expenses relating to petitioner's cottage on Egmont Key. Respondent disallowed these deductions in part because they were personal in nature and in part because they were not adequately substantiated. *225 Section 162 allows a deduction for the ordinary and necessary expenses paid or incurred during the taxable year. Section 262, [5] in contrast, prohibits a deduction for personal, living, or family expenses even if otherwise related to one's occupation. The deduction claimed by petitioner in 1977 consists exclusively of utility expenses associated with the Egmont Key cottage. The 1978 deduction claimed by petitioner includes expenses incurred for items that petitioner claims to have purchased for use in his cottage. In Cooper v. Commissioner,67 T.C. 870 (1977), affd. sub nom. Sibla v. Commissioner,611 F.2d 1260 (9th Cir. 1980) a fire department employee was required, as a condition of his employment, to participate in an organized meal plan at his duty post. The employee was assessed an amount equal to his portion of the total food cost for each 24-hour shift that he worked. This Court allowed the fire department employee a *226 deduction pursuant to section 162 equal to the amount he was required to contribute. According to the Court of Appeals, "that which may be a personal expense under some circumstances can, when circumscribed by company regulations, directives, and conditions, lose its character as a personal expense and take on the color of a business expense." Sibla v. Commissioner,supra at 1262. It is well established that a taxpayer may be in the trade or business of being an employee. Primuth v. Commissioner,54 T.C. 374 (1970). Much like the taxpayer in Cooper v. Commissioner,supra, petitioner in the instant case was required, as a condition of his employment, to own and maintain a cottage on the island of Egmont Key. Respondent argues, however, that the cottage expenses constitute personal expenses nondeductible under section 262. The expenditures incurred by petitioner in the years in issue possess a blend of both personal and business attributes. In such a situation, this Court has held that "placement of that often thin line which distinguishes a 'personal expense' from a 'business expense' depends primarily upon the facts *227 and circumstances of each particular case." Cooper v. Commissioner,67 T.C. at 873. According to respondent, otherwise nondeductible personal expenses may in fact qualify for deduction under certain circumstances. See Rev. Rul. 75-316, 1975-2 C.B. 54. During the years in issue, petitioner was a harbor pilot in the Tampa Bay area and was required, as a condition of his employment, to own and maintain a cottage on a remote island. During 1977 and 1978, petitioner was on call 24 hours a day, 180 days each year, and the cottage served as a necessary haven for on-call pilots to rest bestween job duties while remaining at a location close to where their subsequent assignments would originate. The cottage is, in this sense, the functional equivalent of the fire station in Cooper v. Commissioner,supra, in that its purpose is solely to provide petitioner with a place to eat and sleep while awaiting the next job assignment. In addition, the cottages owned and maintained by the harbor pilots are not used for personal or recreational endeavors. Because of the unusual nature of the petitioner's employment, the involuntary nature of *228 the expenses incurred and the Pilot Association's refusal to reimburse petitioner for the expenses he incurred with regard to the cottage, we find that the amounts in issue constitute ordinary and necessary business expenses. Having reached this conclusion, we must now turn to the issue of whether petitioner has adequately substantiated his 1977 and 1978 expenditures for the deduction in question. [6]
*229 Deductions are provided as a matter of legislative grace and the taxpayer has the burden of proving his entitlement to them. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). The taxpayer's testimony alone is not always sufficient to satisfy this burden of proof. Petitioner has provided the Court with receipts and canceled checks to substantiate some of the deductions claimed with regard to his cottage. Although the documentation proffered with regard to the 1977 and 1978 expenses is incomplete, petitioner argues on brief that we should allow the claimed deductions by applying the approximation rule set forth in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Although this Court has utilized the Cohan rule on many different occasions, it is not automatic and the taxpayer must bring himself within its scope in order to benefit from its applciation. A deduction will be allowed based on an approximation only if the tribunal is convinced that deductible expenses have in fact been incurred.There must be "sufficient evidence to satisfy the trier that at least the amount allowed in the estimate was in fact spent or incurred for the stated *230 purpose." Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957). (Emphasis in original.) According to the rule laid down by Judge Learned Hand in Cohan v. Commissioner,supra, the court should "make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner,supra at 544. The Cohan rule provides the taxpayer with some relief where he incurs deductible expenses but cannot prove their exact amount. Mayrath v. Commissioner,357 F.2d 209, 214 (5th Cir. 1966), affg. 41 T.C. 582 (1964). [7]
Petitioner claimed a deduction *231 in 1977 for utility expenses totaling $312, but failed to provide any documentation to substantiate these expenditures. Although petitioner's only corroboration consisted of his testimony which was vague, we think that an approximation is warranted under the Cohan rule because we are satisfied that the Egmont Key cottage was used for business purposes and that utility expenses were necessarily incurred. We will allow petitioner a deduction for the taxable year 1977 equal to 50 percent of the amount claimed for utility expenses. Petitioner also claimed deductions for expenditures relating to his cottage at Egmont Key totaling $2,326 in 1978.Although the schedules and the testimony of petitioner are incomplete, we are convinced from the record that deductible expenses were in fact incurred by him. We therefore allow petitioner a deduction in 1978 of $714.92 to reflect the cottage expenditures that were substantiated in a manner that allowed this Court to ascertain the amount and date of each expenditure and the identity of same. [8] In addition, we will permit a deduction for the expenditures incurred by petitioner with regard to the telephone that he maintained at the Egmont *232 Key cottage. Although petitioner is claiming that he incurred $253.11 in expenses with regard to the maintenance of this telephone, we can find substantiation for only $189.54 of that amount. In addition, the documentation provided by petitioner shows substantial charges for long distance telephone calls which we are not persuaded represent only business calls. We believe that an approximation is justified under the Cohan rule. We will allow petitioner a deduction for the taxable year 1978 equal to 50 percent of the amount substantiated, or $94.77. B. Telephone Expenses
We turn next to petitioner's claimed deductions for beeper, additional telephone, and telephone answering service expenditures. He claims that such expenditures were ordinary and necessary in his trade or business because, as a harbor pilot, he is required to remain available *233 to receive job assignments by telephone from the Pilot Association. Petitioner testified that he was required to remain in contact at all times during each 24-hour period that he was on call during the years in issue. He also testified that he would be fined if he could not be contacted by the dispatcher while on duty. Respondent agrees that the beeper expenses qualify as ordinary and necessary pursuant to section 162. Petitioner has provided the Court with testimony and corroborating documentation for beeper expenditures in the amounts of $538.56 and $283.28 for 1977 and 1978, respectively. A deduction will be allowed to this extent pursuant to section 162. Respondent contends that petitioner did not adequately demonstrate that his claimed deductions for answering service and telephone charges had a sufficient business nexus. Petitioner claimed deductions in 1977 and 1978 for answering service, beeper and telephone expenditures totaling $1,092 and $1,556, respectively. Respondent cites Levine v. Commissioner,T.C. Memo. 1983-342, wherein this Court disallowed a taxpayer's deduction for telephone expenses. In that case, the taxpayer was a social worker who *234 was required to carry a beeper. Respondent asserts that because petitioner wears such a device, his expenses for his telephone and answering service are personal in nature. Petitioner argues, however, that because of the unique nature of his trade or business, a beeper is often not adequate. For instance, petitioner has no access to a telephone while piloting a ship and therefore he had to call his answering service to obtain his next job assignment after reaching port. In Roth v. Commissioner,17 T.C. 1450 (1952), this Court allowed a deduction for the cost petitioner incurred in maintaining a telephone because the telephone was not used for personal purposes. We held that the expenses relating to the telephone were "so closely and directly related to petitioner's earning of income and reasonably necessary in the course of his employment as to qualify as a deductible expense." Roth v. Commissioner,supra at 1455. The taxpayer in Roth was a fireman who was required, much like petitioner, to remain in communication with his employer while on duty. [9] Thus, the expenses incurred in maintaining a telephone are deductible, provided that the *235 cost incurred thereby is directly related to the taxpayer's trade or business.
Petitioner and Captain Epler both gave credible testimony as to the unique nature of their business and the necessity for maintaining adequate communication with the Pilot Association's dispatcher while on duty. We further recognize that a beeper is not alone sufficient to meet this need due to the frequent and expended periods during which petitioner is piloting ships. Petitioner has provided testimony and corroborating documentation for answering service expenditures during 1977 and 1978 of $527 and $555.58, respectively. Thus, a deduction pursuant to section 162 will be allowed in such amounts. Petitioner's documentation for his base telephone charges *236 indicates six different telephone numbers. According to his testimony, one telephone number (883-7126) was associated with his electronic beeper. Thus, as we noted above, the base telephone charges incurred by petitioner with regard to this number are deductible as a business expense pursuant to section 162. In addition, petitioner testified that 821-3725 represents the number for the telephone used at the Egmont Key cottage. As discussed above, a portion of the base charges incurred with regard to this telephone number are deductible pursuant to section 162.Petitioner, however, was unable to show the extent to which the base telephone charges relating to the remaining four numbers (823-7651, 238-3443, 935-4658, and 935-8166) were business related. Additionally, the photo copies of the telephone invoices submitted by petitioner regarding certain of these telephone numbers indicate monthly charges for long distance calls which we are not persuaded were business-related. Thus, no deduction will be allowed with regard to petitioner's base telephone charges for these remaining four telephone numbers. C. Payroll Expenditures for Petitioner's Employee
Petitioner argues that *237 when he is on duty he needs transportation between his job assignments. He employed Nancy Jo Midulla (Midulla) in the latter half of 1978 primarily as his driver. Petitioner indicated that Midulla also performed some incidental bookkeeping services. On his 1978 Federal income tax return, petitioner deducted payroll expenses of $6,213 and taxes of $587. Section 162(a)(1) provides for "a reasonable allowance for salaries or other compensation for personal services actually rendered." [10] Before reaching the question concerning the reasonableness of the compensation, we must first deal with the threshold issue of whether petitioner actually received the benefit of any personal services from Midulla in 1978. Although petitioner has provided copies of canceled checks payable to Midulla in amounts of $700, $300, $800, $1,500, and $1,000, it is not possible to determine the job assignments *238 for which petitioner actually used his driver. Janet Makinen testified that she dated petitioner during part of the period during which Midulla was allegedly employed. Ms. Makinen indicated that she would often pick petitioner up from different parts of the Tampa Bay area during the period in question. The canceled checks submitted by petitioner in support of his claimed deduction indicate that payments totaling $4,300 were made to Midulla. However, petitioner's own testimony indicates that some of these payments were in fact made to a third party in connection with the painting of petitioner's house. In addition, respondent notes that some of the checks payable to Midulla appear to have been tendered for services that had not yet been performed. Specifically, the check dated November 7, 1978, indicates that it was for wages for the month of November in the amount of $1,000, and for one-half of October in the amount of $500. Obviously the nature of petitioner's business is such that he would not have known of his transportation needs in advance. Finally, it is well-established that the expenses petitioner incurred in traveling from his home to his first assignment or to the *239 Association's facility on Egmont Key, and from his last place of work to home constitute nondeductible commuting expenses. Steinhort v. Commissioner,335 F.2d 496 (5th Cir. 1964), affg. and remanding a Memorandum Opinion of this Court. We believe that a small portion of the amount in question in fact consists of amounts paid by petitioner to Midulla for the services she rendered as his driver. Petitioner, however, has failed to provide any itemization to reflect the amounts paid for each trip. In addition, he admits that at least a portion of the amount in dispute was paid to Midulla to compensate her brother for painting petitioner's residence. Petitioner testified that he did not recall the method by which he calculated the wages paid to his driver but that generally he would pay $5, $10, $15, or $20 for a single trip. A summary of petitioner's duty roster for the last six months of 1978 shows only 126 entries. We believe that a substantial number of these trips constitute commuting and the expenses associated with such trips are nondeductible. *240 Steinhort v. Commissioner,supra.This Court has often permitted deductions based on estimates where the taxpayer is unable to substantiate his expense deductions. Cohan v. Commissioner,supra.In making our approximation, we bear heavily against petitioner whose inexactitude is of his own making. We think that a deduction equal to $630 is reasonable reflecting an allowance of $10 for one-half of the 126 trip entries during the later half of 1978. A deduction will be allowed to that extent. As to a related matter, petitioner also claimed a new jobs credit in 1978 pursuant to section 44B for the wages paid to Midulla. Section 44B provides the taxpayer with a tax credit if he employs certain categories of new workers. The provisions describing the mechanics of the new jobs credit are found in sections 51 through 53. Section 51(g)(1) provides that "[r]emuneration paid by an employer to an employee during any calendar year shall be taken into account only if more than one-half of the remuneration so paid is for services performed in the United States in a trade or business of the employer." As stated above, petitioner did not satisfactorily *241 establish that at least one-half of the amounts paid to Midulla were paid with regard to services she performed for petitioner in his trade or business, and, for this reason, we disallow the claim for the new jobs credit. D. Depreciation Deductions and Investment Tax Credit with Regard to Tangible Personal Property Used in Petitioner's Trade or Business
In 1977 and 1978, petitioner claimed depreciation deductions for certain items of tangible personal property that he asserts were used in his trade or business. The items in question include two automobiles, a telephone recording device (Code-a-phone), an air conditioner, and a lawn mower. As to the two automobiles, the parties have agreed that petitioner is entitled to a depreciation deduction for both years equal to 12.5 percent of the stipulated bases, or $1,960.60 per year. Still at issue is whether petitioner should be allowed a depreciation deduction for the Code-a-phone, the air conditioner, and the lawn mower. Section 167(a)(1) provides for the allowance of a depreciation deduction with regard to property used in the taxpayer's trade or business. We have already determined that petitioner's profession demands that *242 he remain in constant contact with the Pilot Association while he is on duty. Petitioner provided credible testimony to corroborate both the fact that he purchased the telephone recording device in 1977 and the amount that he paid.He also testified that the telephone answering machine was used exclusively in his trade or business. According to petitioner, the device was used to record messages to insure that he received his job assignments in a timely fashion. Accordingly, we find that the recording device constitutes "property used in the trade or business," thereby entitling petitioner to a depreciation deduction pursuant to section 167(a). We have already determined that the expenses associated with the ownership and maintenance of the cottage constitute ordinary and necessary business expenses deductible under section 162(a). The purchase of a lawn mower and air conditioner are generally personal expenditures which are ordinarily nondeductible under section 262. We note, however, that any expenditures possess both personal and business attributes. The fact that a particular expense may under certain circumstances be a nondeductible personal expense does not preclude the *243 deduction of such an expense as an ordinary and necessary business expense under other circumstances. Cooper v. Commissioner,67 T.C. 870 (1977), affd. sub nom. Sibla v. Commissioner,611 F.2d 1260 (9th Cir. 1980). In the instant case, petitioner is a harbor pilot who is required by the Pilot Association to own and maintain a cottage on an island. We find from petitioner's own testimony that both the lawn mower and the air conditioner were purchased and placed in service in 1977 for use exclusively at his cottage on Egmont Key. In addition, the requirement that petitioner own and maintain the cottage was implemented by the Pilot Association in order that he would be more accessible while on duty. Thus, from a practical standpoint, the purchases in issue were a matter of business necessity on the part of both petitioner and his employer. Therefore, we hold that the air conditioner and the lawn mower qualify as "property used in the trade or business" entitling petitioner to depreciation deductions for the years in issue. In 1977, petitioner claimed an investment tax credit for the same items of tangible personal property for which he took depreciation *244 deductions in 1977 and 1978 (two automobiles, the telephone recording device, an air conditioner, and a lawn mower). He testified that all of these items were placed in service in 1977. In addition, the parties stipulated that the percentage of automobile use attributable to the petitioner's trade or business is 12.5 percent for both 1977 and 1978. Thus, petitioner concedes that he is entitled to an investment tax credit based only on such business use. The parties now concur that the investment tax credit for both cars should be computed by using a purchase price of $9,612 and $6,072.76 for the 1978 Chevrolet and the 1977 Toyota, respectively. The parties also agreed that the purchase prices for the telephone recording device, the air conditioner, and the lawn mower total $1,039 for purposes of the investment tax credit. A taxpayer is allowed an investment tax credit when he purchases certain tangible personal business property. Sections 38 and 48(a). To qualify for the credit, the property acquired must constitute "section 38 property." Section 48(a)(1)(A) provides, in relevant part, that the term "section 38 property" means tangible personal property "with respect to which *245 depreciation * * * is allowable and having a useful life * * * of 3 years or more." Section 48(a)(1). [11]
Each of the items at issue clearly satisfies the threshold requirement that it be "tangible personal property." [12] In addition, we have already determined that the Code-a-phone, the air conditioner, and the lawn mower constitute "property used in the petitioner's trade or business" within the meaning of section 167(a)(1). Thus, whether petitioner qualifies for the investment tax credit in 1977 depends upon whether the useful life of these items is 3 years or more. Petitioner asserts that the useful life of the Code-a-phone, the lawn mower, and the air conditioner is each 7 years. This estimate is the same one used by him for depreciation purposes. Generally, in computing depreciation, the taxpayer must estimate the useful life of the asset and this estimation must be "reasonable." Section 1.167(a)-1(b), Income Tax Regs. *246 Rev. Rul. 90, 1953-1 C.B. 43. Respondent has not placed petitioner's useful life estimate in issue and we find no reason to question or change it. Having determined that the Code-a-phone, the air conditioner, and the lawn mower all qualify as "section 38 property," we hold that petitioner qualifies for the investment tax credit with regard to these items. We note that no investment tax credit is allowable with respect to certain additional items claimed because petitioner presented no evidence in support of his claims. Rule 142(a). III. Tax Return Preparation
An individual may deduct ordinary and necessary expenses incurred in connection with he determination, collection, or refund of any tax. Sec. 212(3). [13] The parties dispute the deductibility of certain amounts paid by petitioner to a certified public accountant in 1977 and 1978. Petitioner claims to have paid Grace Tanner, of Grace Tanner and Associates, amounts totaling $3,001 and $4,000 in 1977 and 1978, respectively, for tax related services. The *247 parties now agree that $100 of the 1977 amount represents a fee paid to an attorney for nondeductible legal expenses associated with a real estate transaction. Petitioner contends, however, that the remaining amounts were for expenditures incurred solely in connection with the preparation of his 1977 and 1978 Federal income tax returns. The claimed deductions were disallowed because, as respondent urges, the checks submitted by petitioner to substantiate his expenditures do not provide any apportionment of the amounts properly attributable to section 212(3) expenses. Petitioner has the burden of proving that he is entitled to a deduction under section 212(3). Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Although he was unable to recall specifically each of the payments in question, he provided credible testimony to the effect that Grace *248 Tanner prepared his tax returns for the years in question and that the amounts at issue were paid to her for these tax services. His statements, however, were uncorroborated by the accountant who was not called by petitioner as a witness. We understand from petitioner's testimony that Grace Tanner was later sued by him for professional malpractice and that for this reason her testimony was not available in this case. The only substantiation provided by petitioner consists of canceled checks which fail to provide us with an itemization or description of the specific services rendered by Grace Tanner. Petitioner's failure to provide such documentation makes it difficult for us to determine the portion of the accountant's fees allocable to tax advice and return preparation. Moreover, the amounts that petitioner alleges were expended for tax return preparation seem to us to be extraordinarily high. Based on petitioner's testimony, we are nevertheless convinced that a portion of the amounts in question consisted of amounts properly deductible pursuant to section 212(3). Bearing heavily against the petitioner, "whose inexactitude is of his own making," we find that 10 percent of *249 the fees paid to Grade Tanner in 1977 and 1978 were for tax advice and, therefore, such amounts are deductible under section 212(3). Cohan v. Commissioner,39 F.2d 540, 544 (2d Cir. 1930); Merians v. Commissioner,60 T.C. 187 (1973). IV. Addition to Tax under Section 6653(a)
In his notice of deficiency, respondent determined a section 6653(a) addition to tax. Section 6653(a) provides that if any portion of an underpayment is a result of negligence or intentional disregard of the rules and regulations, there will be added to the tax an amount equal to five percent of the underpayment. [14] A determination of negligence by respondent is presumptively correct and the petitioner has the burden of proving otherwise. Enoch v. Commissioner,57 T.C. 781 (1972). Petitioner testified that he employed a certified public accountant to prepare his 1978 Federal income tax return. He also *250 testified that he relied exclusively on his accountant's tax counseling and advice. He argues that because of this reliance he should not be held subject to the section 6653(a) addition to tax. Petitioner testified that he was unsophisticated in tax matters and therefore had to completely rely on his accountant to advise him regarding the tax consequences of the transactions at issue. Although petitioner may have been well-intentioned, his duty of file accurate and timely income tax returns cannot be avoided solely by his misplaced reliance on his agent. Petitioner may, however, insulate himself from the negligence addition to tax if he can show that he provided his accountant with all the appropriate information to properly prepare his return. Pritchett v. Commissioner,63 T.C. 149, 174 (1974); Pessin v. Commissioner,59 T.C. 473 (1972); Enoch v. Commissioner,supra;Woodbury v. Commissioner,49 T.C. 180 (1967). [15] This is especially true when income is understated because of expert advice as to includibility or deductibility.[16] The Supreme Court recently stated that: *251 When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place. * * * [United States v. Boyle,469 U.S. 241, 251 (1985). Citations omitted.] *252 In the instant case petitioner testified that he turned over to his accountant his receipts, documents, and whatever additional information that she requested. Accordingly, we conclude in these particular circumstances that the underpayment in 1978 was not due to petitioner's negligence or intentional disregard of the rules and regulations. To reflect the concessions made by the parties and our conclusions with respect to the disputed issues, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Sec. 183 provides in relevant part as follows: SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) General Rule. -- In the case of an activity engaged in by an individual * * *, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.↩
3. Cf. Nicath Realty Co., Inc. v. Commissioner,T.C. Memo. 1966-246↩.
4. Sec. 162 provides in relevant part as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *↩
5. Sec. 262 provides as follows: SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES, Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
6. In Vanicek v. Commissioner,85 T.C. 731, 742, 743 (1985), we disallowed deductions for certain expenses incurred by petitioner in operating and maintaining lodgings furnished by his employer. The deductions were disallowed because petitioner failed to provide this Court with any evidence from which we could reasonably apportion the expenses between the business and personal use of the residence. The Vanicek↩ case is distinguishable however, because petitioner in the instant case used the Egmont Key cottage solely for business purposes. Thus, no allocation between business and nonbusiness use is required. Petitioner maintained a residence, separate and apart from the Egmont Key cottage, which he used for personal purposes.
7. See also Stemkowski v. Commissioner,82 T.C. 854, 867 (1984); Epp v. Commissioner,78 T.C. 801, 807 (1982); Merighi v. Commissioner,T.C. Memo. 1981-717; Afshar v. Commissioner,T.C. Memo. 1981-241, affd. without published opinion 692 F.2d 751 (4th Cir. 1982); Shields v. Commissioner,T.C. Memo. 1978-120, affd. without published opinion 644 F.2d 889↩ (9th Cir. 1981).
8. We note that respondent argued that petitioner's cottage expenditures should be disallowed because they are personal in nature or, alternatively, because they were not substantiated. Respondent did not argue that any of these expenditures are capital in nature and therefore not currently deductible by virtue of sec. 263.↩
9. See also Banks v. Commissioner,T.C. Memo. 1981-490, where this Court applied the Cohan↩ rule to allow a fireman a percentage of the expenses he incurred in maintaining a telephone. The taxpayer, much like petitioner in the instant case, was required to be on call 24 hours a day. Although it was not mandatory that he maintain a telephone, he was required to remain within verbal communication within these on call periods.
10. We note that respondent has apparently conceded that petitioner's transportation between job assignments did not involve nondeductible commuting expenses. See Steinhort v. Commissioner,335 F.2d 496↩, (5th Cir. 1964), affg. and remanding a Memorandum Opinion of this Court.
11. Although air conditioners are now excluded from the definition of "tangible personal property," there was no such exclusion in effect during the taxable year in question.↩
12. Intangible personal property, such as a patent or a copyright, does not qualify for the investment tax credit. Sec. 1.48-1(f), Income Tax Regs.↩
13. Sec. 212(3)↩ provides that "[i]n the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- * * * (3) in connection with the determination, collection, or refund of any tax."
14. An "underpayment" is generally defined in the same manner as a deficiency (essentially the correct tax minus the reported tax) except that the amount reported on a late return does not reduce the amount of the underpayment. Sec. 6653(c)(1)↩.
15. See also Otis v. Commissioner,73 T.C. 671, 675 (1980), affd. in an unpublished opinion 665 F.2d 1053 (9th Cir. 1981); Hill v. Commissioner,63 T.C. 225, 251 (1974); Conlorez Corp. v. Commissioner,51 T.C. 467, 475 (1968); Brockman Building Corp. Inc., v. Commissioner,21 T.C. 175 (1953), affd. 231 F.2d 145 (9th Cir. 1955); Nelson v. Commissioner,19 T.C. 575, 581 (1982); Horstmier v. Commissioner,T.C. Memo. 1983-409, affd. without published opinion 776 F.2d 1052 (9th Cir. 1985); O'Heron v. Commissioner,T.C. Memo. 1981-648; Singer v. Commissioner,T.C. Memo. 1979-383↩. 16. Montpetit v. Commissioner,T.C. Memo. 1982-715↩.